IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 3, 2003 Session

## JOSEPH TYREE GLANTON, JR. ET AL. V. MYRTLE LORD ET AL.

**Appeal from the Chancery Court for Rutherford County**
**Nos. 01-2581-CV, 01-3717-CV     Royce Taylor, Judge**

---

**No. M2002-02363-COA-R3-CV - Filed February 15, 2005**

---

This consolidated appeal involves an intra-family dispute over ancestral property. Three brothers filed two separate suits in the Chancery Court for Rutherford County to sell and partition real property that had been owned by their deceased uncle and grandfather. They challenged the right of three of their cousins to inherit because they were non-marital children and their paternity had not been judicially established before their father's death. The trial court rejected the brothers' arguments and granted summary judgments in favor of the cousins in both cases. The brothers appealed both judgments, and this court consolidated the appeals. We affirm the summary judgments in favor of the cousins in both cases and deny the cousins' request for frivolous appeal damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Tusca R. S. Alexis, Nashville, Tennessee, for the appellants, Joseph Tyree Glanton, Jr. a/k/a Songoleke Kotunu, Luvell L. Glanton, and Jerry Glanton.

Frank M. Fly, Murfreesboro, Tennessee, for the appellees, Myrtle Lord, William Glanton, Jr., Simon L. Glanton, Bobbine Wade, Bobby Smith, and James A. Glanton.

**OPINION**

**I.**

This appeal involves three generations of the Glanton family.[1] The first generation is represented by Luther T. Glanton, Sr. ("Grandfather Luther"). The second generation is comprised of Grandfather Luther's nine children, including Joseph T. Glanton, Sr., Robert Lee Glanton, Myrtle Glanton Lord ("Aunt Myrtle"), Simon H. Glanton ("Uncle Simon"), and James A. Glanton ("Uncle

---

[1]In the interest of readability, we have adopted the nomenclature used by the parties in their briefs on appeal to identify certain members of the Glanton family.

James"). The third generation consists of Grandfather Luther's many grandchildren, in particular the children of Joseph T. Glanton, Sr. and Robert Lee Glanton. In the two chancery court cases giving rise to this consolidated appeal, Joseph T. Glanton, Sr.'s three children – Luvell L. Glanton, Joseph T. Glanton, Jr. a/k/a Songoleke Kotunu, and Jerry Glanton (collectively, the "Plaintiff Cousins") – have challenged the right of Robert Lee Glanton's three children – Bobby Glanton Smith, Bobbine Glanton Wade, and Simon L. Glanton (collectively, the "Disputed Heirs") – to inherit by intestate succession.

Grandfather Luther died intestate on April 11, 1961. His estate was not submitted to probate at the time of his death, and for the next forty years, his home and the surrounding land were managed by Aunt Myrtle. Aunt Myrtle rented out the property for much of that time and used the proceeds to pay for family reunions, to bury one of her brothers, and to maintain the property. Aunt Myrtle distributed the remainder of the rental proceeds to various members of the Glanton family.

Uncle Simon died intestate on April 8, 2001. At the time of his death, he had substantial holdings, including five residential rental properties, a grocery store, substantial personal property, and over $300,000 in several bank accounts. However, he left no surviving spouse or children, and both of his parents predeceased him. Under the Tennessee laws of intestate succession, all of his property would pass to the two siblings who survived him – Aunt Myrtle and Uncle James – and to the children of his siblings who predeceased him.[2] His estate was submitted to probate on April 16, 2001, and a statutory Notice to Creditors was published in a local newspaper on May 3 and 10, 2001.[3]

After Uncle Simon died, the Plaintiff Cousins considered filing suit to obtain a determination of their legal rights in the real property of both Uncle Simon and Grandfather Luther. Specifically, the Plaintiff Cousins wanted to challenge the Disputed Heirs' right to inherit from the decedents by intestate succession because their father, Robert Lee Glanton, had not been married to their mothers, and because their paternity had not been adjudicated prior to Robert Lee Glanton's death. Robert Lee Glanton died in an accident in 1960 while the Disputed Heirs were still young children. Although he did not marry the Disputed Heirs' mothers, he acknowledged the Disputed Heirs as his children, and the entire Glanton family treated the Disputed Heirs as his children for the next forty-one years.

The Plaintiff Cousins filed two complaints in the Chancery Court for Rutherford County on May 10 and December 12, 2001 seeking a sale and partition of the real property of Uncle Simon and Grandfather Luther, respectively, and a determination of the inheritance rights of the decedents'

---

[2]Uncle James died a few months after Uncle Simon did. The parties to this consolidated appeal agree that under the laws of intestate succession, Uncle James's share of the inheritance passed to his children.

[3]The Rutherford County Probate Court case involving Uncle Simon's estate has not yet been concluded, and it is not before us in this consolidated appeal.

putative heirs.[4] The Plaintiff Cousins named all of Uncle Simon and Grandfather Luther's putative heirs–including the Disputed Heirs–as defendants in the two cases. In both complaints, the Plaintiff Cousins specifically stated that the Disputed Heirs "claim to be children of Robert Lee Glanton, deceased, and thus heirs of" Uncle Simon and Grandfather Luther. In the May 16, 2001 and January 15, 2002 answers to the two complaints, the Disputed Heirs admitted that they claimed to be Robert Lee Glanton's biological children and that they were thus entitled to inherit from the decedents by intestate succession.

Both sides filed motions for summary judgment in the two cases. The Disputed Heirs argued that DNA testing performed after Uncle Simon's death conclusively established that they were in fact the biological children of Robert Lee Glanton and that they were thus entitled to inherit from both Uncle Simon and Grandfather Luther by intestate succession. The Plaintiff Cousins countered that even if the Disputed Heirs were Robert Lee Glanton's biological children, they were still precluded from inheriting from the decedents by intestate succession. They asserted that the Disputed Heirs could not inherit from Uncle Simon because they failed to assert and prove their paternity and corresponding right to inherit within the time allowed for creditors to file claims against Uncle Simon's estate as required by the Tennessee Supreme Court's decision in *Bilbrey v. Smithers*, 937 S.W.2d 803 (Tenn. 1996). The Plaintiff Cousins argued that the Disputed Heirs could not inherit from Grandfather Luther because he had died over forty years earlier and, therefore, that the ten-year limitation on actions contained in Tenn. Code Ann. § 28-3-110(3) (2000) barred their claim.

The trial court rejected the Plaintiff Cousins' arguments and granted summary judgments in favor of the Disputed Heirs in both cases. In a July 19, 2002 order in the case involving Uncle Simon's real property, the trial court found (1) that the DNA results conclusively established that the Disputed Heirs are the biological children of Robert Lee Glanton; (2) that the Disputed Heirs asserted their paternity and corresponding right to inherit from Uncle Simon in the answer to the complaint initiating the first chancery court suit; (3) that the Disputed Heirs had therefore asserted their right to inherit from Uncle Simon within the time allowed for creditors to file claims against his estate; and (4) that the Disputed Heirs were not required to prove their paternity within the time for creditors to file claims against the estate in order to inherit by intestate succession. In its December 4, 2002 order in the case involving Grandfather Luther's real property, the trial court found (1) that Grandfather Luther's estate had never been probated; (2) that there is no limitation on the time for submitting an estate to probate; (3) that creditors could thus still file claims against Grandfather Luther if and when his estate is ever submitted to probate; and (4) that Tenn. Code Ann. § 28-3-110(3) did not prevent the Disputed Heirs from asserting and proving their paternity and corresponding right to inherit from Grandfather Luther because creditors could still file claims against his estate.

---

[4]Luvert Glanton, the mother of the Plaintiff Cousins, was also a plaintiff in the suit involving Grandfather Luther's real property. However, she is not a party to this consolidated appeal.

The Plaintiff Cousins appealed the summary judgments in favor of the Disputed Heirs. On January 29, 2003, we granted a request to consolidate the appeals. On October 28, 2003, the attorney for the Disputed Heirs filed a motion and brief seeking an award of damages against the Plaintiff Cousins for filing a frivolous appeal in accordance with Tenn. Code Ann. § 27-1-122 (2000).

## II.

The Plaintiff Cousins raise a hodgepodge of issues in their briefs on appeal, most of which are wholly without merit. However, they press three arguments which require discussion. First, relying on *Bilbrey v. Smithers*, 937 S.W.2d 803 (Tenn. 1996), they argue that the Disputed Heirs' answer admitting that they claimed to be Robert Lee Glanton's biological children and thus entitled to inherit from Uncle Simon by intestate succession was legally insufficient to assert their claim. Second, they argue that even if the answer was sufficient to assert the claim, the Disputed Heirs were also required to prove their paternity within the time for creditors to file claims against Uncle Simon's estate under this court's decision in *Scaife v. Roberson*, No. E2002-02666-COA-R3-CV, 2003 WL 1453061 (Tenn. Ct. App. Mar. 21, 2003) (No Tenn. R. App. P. 11 application filed) and that they failed to do so. Third, they argue that the ten-year statute of limitations in Tenn. Code Ann. § 28-3-110(3) bars the Disputed Heirs from inheriting from Grandfather Luther by intestate succession because Grandfather Luther died over forty years before the suit for a sale and partition of his real property was filed. We will address each of these arguments in turn. Because all three arguments present questions of law, we will review the trial court's determinations de novo with no presumption of correctness. *Kilgore v. NHC Healthcare*, 134 S.W.3d 153, 156 (Tenn. 2004).

## III.
### THE MANNER IN WHICH THE DISPUTED HEIRS ASSERTED THEIR PATERNITY AND CORRESPONDING RIGHT TO INHERIT FROM THEIR UNCLE

The Plaintiff Cousins assert that the trial court erred by holding that the Disputed Heirs had effectively asserted their paternity and corresponding right to inherit from Uncle Simon by intestate succession. They insist that the Disputed Heirs' answer to their complaint admitting that they were claiming a right to inherit from Uncle Simon because they were Robert Lee Glanton's children was not the sort of claim envisioned by the Tennessee Supreme Court in *Bilbrey v. Smithers*. This argument exalts form over substance.

### A.

Non-marital children may inherit by intestate succession from or through their biological father if their "paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof." Tenn. Code Ann. § 31-2-105(a)(2)(B) (2001). Over twenty-five years ago, the Tennessee Supreme Court, interpreting the predecessor to Tenn. Code Ann. § 31-2-105, held that where the adjudication of paternity does not occur until after the father's death, non-marital children may inherit by intestate succession from or through their father only "where rights of inheritance have not finally vested" in the other heirs. *Allen v. Harvey*, 568 S.W.2d 829, 835 (Tenn. 1978).

Six years later, the Tennessee Supreme Court retreated from *Allen v. Harvey* when it allowed a non-marital child to inherit by intestate succession from his biological father even though he did not assert his right to inherit until three and one-half years after his father's death. *Marshall v. Marshall*, 670 S.W.2d 213 (Tenn. 1984). As the Court itself later noted, permitting Mr. Marshall to assert his paternity claim "obviously disturbed vested property rights." *Bilbrey v. Smithers*, 937 S.W.2d at 806.

The Court also noted that in the eighteen years since its *Allen v. Harvey* decision, neither it nor the Tennessee General Assembly had "addressed directly the time within which a child born out of wedlock must assert the right to inherit by virtue of his relationship with his natural father." *Bilbrey v. Smithers*, 937 S.W.2d at 806-07. Accordingly, the Court set about to determine how *Allen v. Harvey*'s temporal limitation on intestate succession claims by non-marital children should be applied in practice. The Court held that in the absence of a statute addressing the issue, non-marital children seeking to inherit from or through their biological father by intestate succession "must assert the right to inherit within the time allowed creditors to assert a claim against the estate of the person who was the owner of the property in which an interest is claimed." *Bilbrey v. Smithers*, 937 S.W.2d at 808.

While conceding that its decision was "somewhat arbitrary," the Court explained that it chose this limitations period because (1) it could be implemented by reference to familiar and well defined rules, (2) it provided the constitutionally mandated notice to claimants, (3) it protected the rights of creditors and subsequent property owners, (4) it posed no threat to "rights of inheritance" beyond those already posed by creditors and taxing authorities, and (5) it retained the current degree of dependability in the titles to intestate property. *Bilbrey v. Smithers*, 937 S.W.2d at 808. The Court reiterated its holding as follows:

> In summary, a child born out of wedlock, whose paternity was not adjudicated prior to the death of the father, can establish the right to inherit by intestate succession by asserting that right against the estate of the deceased owner of the property in which an interest is claimed within the time allowed for creditors to file claims against the estate and by establishing paternity by clear and convincing proof.

*Bilbrey v. Smithers*, 937 S.W.2d at 808.

## B.

The Plaintiff Cousins argue that *Bilbrey v. Smithers* bars the Disputed Heirs from inheriting from Uncle Simon by intestate succession. They note that the deadline for creditors to file claims against Uncle Simon's estate was September 3, 2001, four months from the date of the first publication of the Notice to Creditors,[5] and they argue that the Disputed Heirs failed to "assert the right to inherit" within that time. The Disputed Heirs counter that their claim of paternity and a

---

[5]Tenn. Code Ann. §§ 30-2-306(c) (2001), 30-2-307(a)(1) (2001).

corresponding right to inherit from Uncle Simon was actually raised and put at issue in the pleadings in this case. They point out that the Plaintiff Cousins' May 10, 2001 complaint and their May 16, 2001 answer, both filed long before the September 3, 2001 deadline for creditors' claims, raised their paternity claim and corresponding inheritance claim. The Plaintiff Cousins respond that the Disputed Heirs' answer to their complaint is insufficient because *Bilbrey v. Smithers* requires the claim to be made in a separate complaint or counterclaim.

Neither *Bilbrey v. Smithers* nor its progeny require that a non-marital child's assertion of paternity and a corresponding right to inherit by intestate succession must be made in a separate complaint or a counterclaim in order to be valid. While it is true that the non-marital child in *Bilbrey v. Smithers* asserted his claim in a complaint instituting a lawsuit rather than in an answer to a complaint, there is no suggestion in *Bilbrey v. Smithers* that this procedural detail affected the outcome of the case. *Bilbrey v. Smithers* requires only that non-marital children "assert the right to inherit" in some proceeding leading to a "judicial determination" of paternity. *Bilbrey v. Smithers*, 937 S.W.2d at 807-08. It does not require that the assertion be made in a particular proceeding or that it be made in any particular form.

In short, we do not construe *Bilbrey v. Smithers* to impose a formalistic pleading requirement that would force non-marital children to file a separate action or a counterclaim when the issue has already been raised in the complaint instituting the lawsuit and the issue has been joined in an answer filed by the non-marital children seeking to inherit. Thus, it is irrelevant that the Disputed Heirs raised the issue by way of an answer rather than by filing a separate complaint or a counterclaim. *Bilbrey v. Smithers* requires only that a non-marital child seeking to inherit by intestate succession from or through his or her father raise the issue of paternity and a corresponding right to inherit in some proceeding which affords the other putative heirs notice and an opportunity to be heard on the issue. Because the Disputed Heirs met this requirement, we reject the Plaintiff Cousins' argument that *Bilbrey v. Smithers* bars their claim to inherit from Uncle Simon.

**IV.**
**THE TIMELINESS OF THE ESTABLISHMENT OF THE DISPUTED HEIRS' PATERNITY**

The Plaintiff Cousins next argue that even if the Disputed Heirs have asserted their claim in a timely manner, they are still precluded from inheriting from Uncle Simon by intestate succession because their paternity was not judicially established in a timely manner. Relying on *Scaife v. Roberson*, No. E2002-02666-COA-R3-CV, 2003 WL 1453061 (Tenn. Ct. App. Mar. 21, 2003) (No Tenn. R. App. P. 11 application filed), they assert that non-marital children must have their paternity judicially established within the time allowed for creditors to file claims against a decedent's estate in order to be entitled to inherit by intestate succession.

There is no factual question here. The Disputed Heirs did not obtain a judicial determination of their paternity until July 19, 2002 when the trial court issued its order granting their motion for summary judgment and declaring that they were the biological children of Robert Lee Glanton. This declaration came approximately ten months after September 3, 2001, the deadline for creditors to file claims against Uncle Simon's estate. Thus, if we were to apply the holding of *Scaife v. Roberson*

to this case, the claims of the Disputed Heirs would be barred.  However, we respectfully decline to follow *Scaife v. Roberson*.[6]

We find three fundamental flaws in the reasoning of *Scaife v. Roberson*.  First, we do not read *Bilbrey v. Smithers* to require the result reached in the case.  The only question before the Tennessee Supreme Court in *Bilbrey v. Smithers* was "the time within which a child born out of wedlock must *assert* the right to inherit by virtue of his relationship with his natural father." *Bilbrey v. Smithers*, 937 S.W.2d at 806-07 (emphasis added).  The Court did not consider, let alone decide, how long a non-marital child has to prove paternity once a timely claim has been filed.  Judicial opinions are authority only for the points actually considered and decided.  *Shousha v. Matthews Drivurself Serv., Inc.*, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn. 1962) ("[i]t is familiar law that a decision is authority for the point or points decided, and nothing more"); *People v. Gilbert*, 462 P.2d 580, 585 n.7 (Cal. 1969) ("[i]t is axiomatic that cases are not authority for propositions not considered").  Thus, the decision in *Bilbrey v. Smithers* did not compel the holding of *Scaife v. Roberson*.

Second, requiring non-marital children not only to assert their paternity and a corresponding right to inherit by intestate succession but also to prove this assertion within the time allowed for creditors to file claims against the decedent's estate would be inconsistent with the practice followed with respect to actual creditors of an intestate estate, which is the touchstone of *Bilbrey v. Smithers*.  Tenn. Code Ann. § 30-2-306(c) requires creditors to file claims against a deceased's estate within four months of the first publication of the Notice to Creditors; however, there is no statutory deadline for resolving creditors' claims.  In light of the Tennessee Supreme Court's decision to equate the claims of non-marital children with creditors' claims, we perceive no reason why the timetable for the disposition of these claims should differ.

Tenn. Code Ann. § 30-2-314(a) (2001) provides that the personal representative or any person interested in the estate as a creditor, distributee, heir, or otherwise has thirty days from the expiration of the deadline for creditors' claims to file exceptions to any such claims.  If any party filing an exception demands a jury trial, Tenn. Code Ann. § 30-2-314(d)(3) requires the probate court clerk to certify the file to the circuit court, and "[a]fter the matter has been certified to the circuit court for trial, it shall be proceeded within [sic] that court as in any other law case."  In such cases, an heir's inheritance rights may not "finally ves[t]" until long after the expiration of the initial deadline for creditors to file claims against the estate. *Bilbrey v. Smithers*, 937 S.W.2d at 807.  Thus, as with actual creditors, as long as a non-marital child asserts paternity and a corresponding right to inherit by intestate succession by the statutory deadline for creditors to file claims against the decedent's estate, the fact that the judicial process establishing paternity extends past that deadline will have no bearing on the viability of the non-marital child's claim.

The third flaw in the reasoning of *Scaife v. Roberson* is that it is unreasonable to expect that non-marital children who have not established paternity before their biological father's death will

---

[6]The opinion, having not been officially reported, is considered "persuasive" but not "controlling."  Tenn. S. Ct. R. 4(H)(1).

be able to obtain an actual adjudication of paternity within the relatively short deadlines applicable to the filing of creditors' claims against a decedent's estate. Given the trial courts' often crowded dockets, the parties' right to discovery under the Tennessee Rules of Civil Procedure, and the time necessary to obtain DNA testing, it is unrealistic to think that non-marital children seeking to inherit by intestate succession will be able to secure an actual adjudication of paternity within the four months following the first publication of the Notice to Creditors in every or even a majority of the cases. Thus, the imposition of such a requirement would, in many cases, essentially undermine the statutory command that non-marital children be allowed to inherit by intestate succession from or through their biological father if paternity is established by an adjudication before the father's death "or is established *thereafter* by clear and convincing proof." Tenn. Code Ann. § 31-2-105(a)(2)(B) (emphasis added). We do not believe the Tennessee Supreme Court intended such a result with its decision in *Bilbrey v. Smithers*.

For the foregoing reasons, we respectfully decline to follow the *Scaife v. Roberson* decision. As long as a non-marital child asserts his or her paternity and a corresponding right to inherit by intestate succession within the time allowed for creditors to file claims against the decedent's estate, the claim will not be barred under *Bilbrey v. Smithers* even though the actual adjudication of paternity may not take place for some time. This delay in the final vesting of the rights of inheritance in the other heirs of the decedent is consistent with the delay occasioned by the filing of claims by actual creditors. Thus, we reject the Plaintiff Cousins' argument that the Disputed Heirs cannot inherit from Uncle Simon by intestate succession because they failed to establish their paternity within the time for creditors to file claims against his estate.

## V.
### THE TIMELINESS OF THE DISPUTED HEIRS' CLAIM TO THEIR GRANDFATHER'S ESTATE

Finally, the Plaintiff Cousins assert that the trial court erred by concluding that the Disputed Heirs' claim to Grandfather Luther's property was not barred by the ten-year statute of limitations in Tenn. Code Ann. § 28-3-110(3). They insist that the claim is barred because Grandfather Luther died in 1961 and the Disputed Heirs did not file their claim until 2001. We have concluded that the trial court correctly decided that the Disputed Heirs' claim was not time-barred because Grandfather Luther's estate had never been probated and, therefore, the time for creditors to file claims against his estate had not yet expired.

The ten-year statute of limitations in Tenn. Code Ann. § 28-3-110(3) is essentially a "catch-all" statute of limitations applicable to all causes of action for which the law does not provide a more specific statute of limitations. *In re Estate of Overton*, No. 03A01-9701-PB-00025, 1997 WL 269473, at *1 (Tenn. Ct. App. May 21, 1997) (No Tenn. R. App. P. 11 application filed). Thus, in order to determine whether Tenn. Code Ann. § 28-3-110(3) bars the claim of the Disputed Heirs in this case, we must first determine whether the law expressly provides a more specific limitations period for such a claim. We have concluded that it does.

The Tennessee Supreme Court has directly addressed the question of "the time within which a child born out of wedlock must assert the right to inherit by virtue of his relationship with his natural father." *Bilbrey v. Smithers*, 937 S.W.2d at 806-07. The Court held that

> a child born out of wedlock, whose paternity was not adjudicated prior to the death of the father, can establish the right to inherit by intestate succession by asserting that right against the estate of the deceased owner of the property in which an interest is claimed within the time allowed for creditors to file claims against the estate.

*Bilbrey v. Smithers*, 937 S.W.2d at 808. The statutes governing the assertion of creditors' claims against a decedent provide specific limitations on the time within which such claims must be brought. Tenn. Code Ann. §§ 30-2-306, 30-2-307, 30-2-310 (2001). Because Tennessee law expressly provides a specific limitation on claims such as the one raised by the Disputed Heirs, Tenn. Code Ann. § 28-3-110(3) does not apply to their claim.

Having ruled out the application of Tenn. Code Ann. § 28-3-110(3) to this case, it remains to be decided when the applicable statutes of limitation began to run with regard to the Disputed Heirs' claim and whether the limitations period has expired. The trial court determined that the statutes of limitation applicable to the Disputed Heirs' assertion of their paternity and corresponding right to inherit from Grandfather Luther by intestate succession had not yet started to run. We agree.

The statutes of limitation applicable to creditors' claims – and thus to a non-marital child's claim of paternity and a corresponding right to inherit by intestate succession – do not begin to run until after a decedent's estate is submitted to probate and a statutory Notice to Creditors is published or posted. Tenn. Code Ann. §§ 30-2-306, 30-2-307, 30-2-310; *Brady v. Smith*, 56 S.W.3d 523, 526 (Tenn. Ct. App. 2001); *Estate of Divinny v. Wheeler Bonding Co.*, No. M1999-00678-COA-R3-CV, 2000 WL 337584, at *2-3 (Tenn. Ct. App. Mar. 31, 2000), *perm. app. denied* (Tenn. Dec. 4, 2000). As a result, until a probate estate is opened, neither creditors' claims nor assertions by non-marital children of a right to inherit by intestate succession are barred by the applicable statutes of limitation. Moreover, under Tennessee law, there is no limit on the time for submitting an estate to probate. 1 JACK W. ROBINSON, SR. & JEFF MOBLEY, PRITCHARD ON THE LAW OF WILLS AND ADMINISTRATION OF ESTATES § 35, at 56 (5th ed. 1994); *In re Estate of Overton*, 1997 WL 269473, at *1-2. Thus, Grandfather Luther's estate could still be probated even at this late date, and creditors would then be able to file claims against the estate. Accordingly, under *Bilbrey v. Smithers*, the claim of the Disputed Heirs to inherit from Grandfather Luther by intestate succession is not yet barred by any applicable statute of limitations.

The Plaintiff Cousins contend that this legal analysis is inconsistent with *Brady v. Smith*. In that case, the decedent, who had never been married, died intestate in 1992. His estate was never administered. Four years later, the decedent's two sisters filed a complaint seeking a sale and partition of the decedent's real property. One year later, a guardian ad litem appointed by the court to represent the interests of the decedent's "unborn and unknown heirs" filed an answer stating that two individuals had approached him claiming to be the biological children of the decedent. These

two individuals later petitioned to intervene in the case and sought an adjudication of their paternity and their right to inherit from the decedent. They subsequently proved through DNA testing that the decedent was their biological father.

The decedent's sisters argued that the non-marital children's claim was time-barred because the applicable statute of limitations was one year from the date of the decedent's death under Tenn. Code Ann. §§ 30-2-306, 30-2-307, and 30-2-310, and the non-marital children had not asserted their claim within that time. The non-marital children responded that their claim was not time-barred because the applicable statute of limitations was ten years under Tenn. Code Ann. § 28-3-110(3), and they had asserted their paternity and right to inherit by intestate succession within that time. The trial court accepted the non-marital children's argument that Tenn. Code Ann. § 28-3-110(3)'s ten-year statute of limitations governed their claim, and the Eastern Section of this court affirmed the trial court's decision. *Brady v. Smith*, 56 S.W.3d at 525-27.

In *Brady v. Smith*, the Eastern Section had no reason to analyze the applicability of Tenn. Code Ann. § 28-3-110(3) to the claims of non-marital children filed more than ten years after the decedent's death. The disputed claim in that case had been filed within ten years of the decedent's death, and the parties had agreed that if the one-year statutes of limitation in Tenn. Code Ann. §§ 30-2-306, 30-2-307, and 30-2-310 did not apply, then the ten-year statute of limitations in Tenn. Code Ann. § 28-3-110(3) did. Had the Eastern Section been confronted squarely with the question whether Tenn. Code Ann. § 28-3-110(3) bars intestate succession claims by non-marital children asserted more than ten years from the date of the decedent's death where the decedent's estate was never submitted to probate, the Eastern Section might well have concluded – as we have – that Tenn. Code Ann. § 28-3-110(3) does not apply to such claims in light of the Tennessee Supreme Court's decision in *Bilbrey v. Smithers* and the statutes setting specific limitations periods for the filing of creditors' claims against a decedent's estate.

While our approach may differ somewhat from the approach taken by the Eastern Section in *Brady v. Smith*, our analysis is fully consistent with the result reached in that case. As explained above, it is only after the decedent's estate has been submitted to probate that the limitation on intestate succession claims by non-marital children contained in *Bilbrey v. Smithers* begins to run. Thus, under our analysis, the non-marital children in *Brady v. Smith* would have been free to pursue their intestate succession claim because the decedent's estate had never been administered, and so the limitation on the non-marital children's claim had not yet begun to run. The only difference between our approach and that of the Eastern Section is that the Eastern Section relied on Tenn. Code Ann. § 28-3-110 to reach this result, while under our analysis, reliance on Tenn. Code Ann. § 28-3-110 would have been unnecessary.

## VI.
### FRIVOLOUS APPEAL DAMAGES UNDER TENN. CODE ANN. § 27-1-122

The Disputed Heirs, asserting that this appeal is frivolous, have requested this court to require the Plaintiff Cousins to pay for the legal expenses they incurred on this appeal. Parties should not be forced to bear the cost and vexation of baseless appeals. *Davis v. Gulf Ins. Group*, 546 S.W.2d

-10-

583, 586 (Tenn. 1977); *Young v. Barrow*, 130 S.W.3d 59, 66-67 (Tenn. Ct. App. 2003). Accordingly, in 1975, the General Assembly enacted Tenn. Code Ann. § 27-1-122 to permit appellate courts to award damages against parties whose appeals are frivolous or are brought solely for the purpose of delay. A frivolous appeal is an appeal that is so devoid of merit that it has no reasonable chance of succeeding. *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978); *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). Determining whether to award these damages is a discretionary decision. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985).

We have determined that this appeal is not frivolous. As explained above, in *Scaife v. Roberson*, the Eastern Section of this court accepted the argument pressed by the Plaintiff Cousins that non-martial children seeking to inherit from or through their biological father by intestate succession must not only assert their paternity within the time for creditors to file claims against the decedent's estate, but must also establish their paternity within that time. In addition, in *Brady v. Smith*, the Eastern Section of this court accepted the argument pressed by the Plaintiff Cousins that Tenn. Code Ann. § 28-3-110(3) applies to intestate succession claims by non-marital children such as the Disputed Heirs. Although we have rejected these arguments in the present case, we would be hard-pressed indeed to label an appeal frivolous where a substantial portion of it is based on arguments accepted by another section of this court. Accordingly, the motion for damages for filing a frivolous appeal is denied.

## VII.

We affirm the judgment concluding that Bobby Glanton Smith, Bobbine Glanton Wade, and Simon L. Glanton are the biological children of Robert Lee Glanton and that they are entitled to inherit from Luther T. Glanton, Sr. and Simon H. Glanton by intestate succession. We remand the case to the trial court for whatever further proceedings may be required, and we tax the costs of this appeal, jointly and severally, to Luvell L. Glanton, Joseph T. Glanton, Jr. a/k/a Songoleke Kotunu, and Jerry Glanton and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.