IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 8, 2012

IN RE ESTATE OF JAMES SHEPERD[1] SMITH, DECEASED

Appeal from the Chancery Court for Hamilton County
No. 10-P-474    Jeffrey M. Atherton, Chancellor

No. E2012-00995-COA-R3-CV-FILED-DECEMBER 27, 2012

Sonya Wyche ("the Putative Daughter") was named as one of the heirs of James Sheperd Smith, deceased ("the Deceased"), in the petition for letters of administration filed by James B. Smith and Jacqueline Smith Gunn (collectively "the Adminstrators"). The Administrators filed a "Motion to Determine Identity of Heirs" approximately 13 months after the Deceased died. The court held that the Putative Daughter's claim as a child born out of wedlock was not perfected in a timely fashion. The court also held that the Putative Daughter did not carry her burden of proving that the Administrators, by naming her as an heir in the petition, acted with intent to trick her into not filing a timely claim. The Putative Daughter appeals. We affirm.

Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., joined. JOHN W. MCCLARTY, J., not participating.

Whitney Durand, Chattanooga, Tennessee, for the appellant, Sonya Wyche.

Jennifer Kent Exum and G. Michael Luhowiak, Chattanooga, Tennessee, for the appellee, the Estate of James Sheperd Smith.

**OPINION**

[1]The petition spells the middle name "Shep*h*erd." All the briefs and the order on appeal delete the "h" from the spelling of the middle name. We assume the parties are now using the correct spelling.

The Deceased died May 11, 2010.  At the time of his death, he owned one or more businesses along with some rental properties.  The value of his assets appears to have been between $350,000 and $500,000.  On August 24, 2010, the Administrators filed a petition for intestate administration of the Deceased's estate.  "Sonya Wych[e], Adult Daughter, Address unknown" was listed as one of the heirs, along with the Administrators, and two other brothers. The petition was granted and letters of administration were issued immediately.  Notice to creditors was published on August 27, 2010 and September 3, 2010.

On June 22, 2011, the Administrators filed their "Motion to Determine Identity of Heirs."  The motion alleged that due to uncertainty of parentage of some of the children who claimed to be heirs, counsel for the estate had asked all of the persons claiming to be heirs to supply proof of parentage and that not all of the alleged heirs had supplied the requested documentation.  The court referred the motion to the clerk & master for a hearing.  The hearing was delayed several times, once because of the filing of a motion to withdraw of counsel for the Daughter upon the ground that counsel "has been unable to secure her prompt cooperation in this cause."  The motion is styled as a "Motion to Withdraw as Counsel for Potential Heir."  Counsel was allowed to withdraw.

Substitute counsel filed notice on February 28, 2012, that the Putative Daughter had filed a separate action to establish paternity.  A copy of the complaint and its exhibits were filed as attachments to the notice.  The exhibits include an obituary listing the Putative Daughter as one of the Deceased's children.  Another exhibit is a copy of a DNA analysis conducted on the Putative Daughter and one of her first cousins, which analysis states it "is inconclusive as to biological relationship" between the Putative Daughter and her cousin.

When the matter came on for hearing before the clerk and master, he declined to accept any proof on the issue of whether the estate was estopped to contest the Putative Daughter's right to inherit as an heir.  After hearing considerable argument, the clerk and master stated: "We don't need to go any further on this."  Later in the hearing, he explained:

> Under the law, the way the law stands as of right now, I have to do a master's report to the court that she is not an heir because this process was started long after the one-year statute of limitations; okay?  Now, if the judge agrees with you, you may have a full-blown hearing on it. . . .

\* \* \*

. . . . I'll do a report to the court that the other heirs are the sole heirs.

The clerk and master's report states that the Putative Daughter's "claim is barred by the untimely filing of her cause of action for paternity more than one year from the date of [the Deceased's] death." The Putative Daughter filed objections to the clerk and master's report based upon several grounds, including equitable estoppel and judicial estoppel. She argued that the clerk and master erred in not accepting proof on her assertions of estoppel.

The trial court held an evidentiary hearing limited to the issue of whether the Administrators are estopped to assert the untimeliness of the Putative Daughter's claim. The Putative Daughter called, as her first witness, James B. Smith. He testified that he did not know if the Putative Daughter was in fact the Deceased's child. He included her as an heir because she claimed to be a child of the Deceased. Shortly after the Deceased's death, the putative siblings, including the Putative Daughter and the mother to the two younger brothers met to discuss the administration of the estate. They came to a preliminary agreement that the Putative Daughter would receive one of the rental houses, subject to showing that she was in fact the Deceased's child. At the Putative Daughter's request, he gave her one rent check but did not give her another one when she failed to come forward with documentation of her parentage. In November 2010, there was a meeting between counsel for the estate and the Putative Daughter. Mr. Smith did not attend that meeting. It was his understanding from emails and other correspondence that the meeting was to make the Putative Daughter aware that she would not be included among the heirs if she did not submit proof of parentage. The Administrators told her that she would need a lawyer.

The Putative Daughter was the next witness. She testified that the Deceased admitted to numerous family members, including the Administrators, that she was his daughter. According to the Putative Daughter, he bought her a car on her 16th birthday and took her to numerous family reunions where he introduced her as his daughter. The Putative Daughter acknowledged that she attended a meeting with counsel for the estate in November 2010, but claimed to have called the meeting out of concern that the inventory was incomplete. She denied being asked at that meeting to supply documentation of her parentage. When asked whom her birth certificate identified as her parents, she testified that no father was identified and that she did not know that until late 2011.

Jacqueline Gunn was the only witness called by the estate. She testified that, during the first preliminary meeting, it was made clear to the Putative Daughter that she would not get the rental house unless she proved her parentage. Ms. Gunn was at the November 2010 meeting. She testified that the Putative Daughter was told to produce a birth certificate as proof of parentage, as all siblings had done. She also testified that after the November 2010

meeting, she received a voice message from the Putative Daughter about the November meeting. According to Ms. Gunn, the Putative Daughter was upset about being told to produce a birth certificate.

After hearing the proof, the court announced from the bench the following findings, among others:

> . . . . It's the undisputed testimony of [the Putative Daughter] that she was born out of wedlock, and there is no proof of any type of paternity or legitimation proceeding prior to the passing of [the Deceased].
>
> This is not the paternity hearing, but this hearing has to do with whether or not [the Putative Daughter] should be barred from pursuing a claim as an heir. At the outset, the Court will simply say this. The Court respectfully disagrees with . . . counsel for [the Putative Daughter] and holds as a conclusion of law that the petition for intestate administration is not a claim nor the assertion of a claim as envisioned by the *Glanton v. Lord* case 183 S.W.3d 391 as she did not petition the court to become one of the administrators.
>
> *Glanton* notes that nonmarital children are required to assert the right to inherit. . . . Therefore, . . . this Court holds that the Clerk and Master ruled correctly concerning whether or not a claim or an assertion of the right to inherit was timely filed.
>
> However, the statute of limitations . . . may be tolled under the circumstances where judicial estoppel or equitable estoppel is shown. . . .
>
> That being said, at issue is [the Putative Daughter's] contention that the relevant [willful] misstatement of fact or false representation or concealment . . . is in the Petition . . . where it refers to [the Putative Daughter] as an adult daughter of [the Deceased] with an unknown address. The Court accepted evidence to determine if, by presentation of proof, [the Putative Daughter] might overcome the persuasive finding in [*Scaife v. Roberson*, No. E2002-02666-COA-R3-CV, 2003 WL 1453061 (Tenn. Ct. App. E.S., filed March 21, 2003) ], that a petition is

a preliminary form that must be completed before an administrator can be appointed and, as such, may be completed with incomplete or inaccurate information due to the lack of time, authority, or resources to discover all the relevant facts. The burden was upon [the Putative Daughter].

. . . [T]he Court heard that some negotiations took place concerning [the Putative Daughter's] potential receipt of estate assets . . . . [I]t was particularly interesting that after conveying one rental check from property that was apparently to be designated to [the Putative Daughter], no additional checks were paid. There was no proof of any argument. There was no proof of any objection to the discontinuation of payments. But rather, there was silence . . . .

The Court, of course, received testimony from [the Putative Daughter]. She confirmed that she was born out of wedlock. She never saw her own birth certificate that omits her father's name until late 2011. The Court has some problems with that. . . .

In any event, in October 2010, [the Putative Daughter] was provided a copy of the pleadings as is reflected in [the trial exhibits]. By November 2010, a meeting of some type took place. . . . [T]he exact nature of that meeting may be in dispute but what . . . provides the Court some direction is the e-mail that came in without objection . . . being the e-mail of November 8, 2010, and the line . . . indicating, let her know she will need a lawyer as we want paternity if she's not ready to settle with her house.

. . . . That is direct reflection concerning the mindset of an administrator or administratrix in this case. . . . Did the content of that statement in [the petition] represent an intention or willful misstatement of fact that was intended to lull . . . [the Putative Daughter] . .. into not feeling obligated to protect her own rights?

And, again, I think that line in and of itself reflects the mindset of the [A]dministrators and certainly does not reflect that some

type of deceptive act or deceptive statement had taken place at the time of the filing of the petition. Certainly, the concerns mentioned in the e-mail of November 8, 2010 are inconsistent with [the Putative Daughter's] testimony concerning the contents of the meeting and the conversations of the meeting which took place on November 10th, 2010.

Ultimately, the Court finds that the [Putative Daughter] had not carried her burden of proof. The court finds that the statement in the petition does not represent a willful misstatement of fact to the extent required to establish judicial estoppel or equitable estoppel. And, in all candor, the Court would note the petition is more of a notice to the world that they need to stand up and act and it is not an instruction to someone that they might sit back upon their own rights.

The court entered an order incorporating its findings as well as the additional finding that the Putative Daughter did not file any "assertion of a right to inherit" until well more than a year after the Deceased died. The Putative Daughter filed her notice of appeal from the order denying her status as an heir.

II.

The Putative Daughter raises issues as to whether the court erred in finding that the petition deceived her into believing that she did not need to file a claim.[2]

III.

Our review of a trial court's findings of fact after a bench trial is de novo, with a presumption that the findings are correct unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). "Questions of law . . . are reviewed de novo with no presumption of correctness." *Id*.

---

[2]The Putative Daughter also lists, as an issue, whether the order she is appealing from is final. The Estate does not challenge the finality of the order. It appears to us that the order falls within the parameters of Tenn. Code Ann. § 30-2-315 (b)(2007). The statute allows an appeal from an order granting or denying a claim. *Id*.

IV.

The Putative Daughter's arguments all reduce down to assertions that the trial court (1) misread our opinion in *Scaife*, and (2) erred in finding that the statement made in the petition listing her as a child of the Deceased was not made with intent to deceive her into thinking she did not need to file a claim.[3]

The Putative Daughter asserts that the trial court should not have applied our opinion in *Scaife* to the facts of the present case. In *Scaife*, Adrian Scaife was listed as a daughter in the initial petition for letters of administration. 2003 WL 1453061 at *1. That petition was never granted. *Id*. In an amended petition, she was listed as an heir, but not specifically as a child. *Id*. She was later sent a letter explaining that in order to inherit she must establish paternity within the four months allowed for creditor to file claims against the estate. *Id*. She did not. In an attempt to avoid the time-bar, Ms. Scaife made the argument that "she should be entitled to rely upon the sworn statement made in the Amended Petition, rather than on the unsworn assertions set forth in the Notice to Creditors letter." *Id*. at *4. We considered whether the estate was estopped from raising or relying on the statute of limitations to deny her status as a child heir. *Id*.

We found two insurmountable problems with the putative child's argument. First, "a petition is 'a preliminary form that must be completed before an administrator can be appointed' and, as such, may be completed with incomplete or inaccurate information due to lack of 'time, authority, or resources to discover all the relevant facts.' " *Id*. (*quoting* trial court). Therefore, listing of someone as an heir in the petition does not rise to the level of

---

[3]It is clear that

> a child born out of wedlock, whose paternity was not adjudicated prior to the death of the father, can establish the right to inherit by intestate succession by asserting that right against the estate of the deceased owner of the property in which an interest is claimed within the time allowed for creditors to file claims against the estate and by establishing paternity by clear and convincing proof.

*Bilbrey v. Smithers*, 937 S.W.2d 803, 806 (Tenn. 1996). Creditors must file a claim within four months of the notice to creditors, or, if they received no notice, within a year of death. *See In re Estate of Bennett*, No. E2004-02007-COA-R3-CV, 2005 WL 2333597 at * 3-5 (Tenn. Ct. App. E.S., filed Sept 23, 2005)(discussing the meaning of Tenn. Code Ann. §§ 30-2-307 and 310 (2002)). If the right to inherit is not asserted within this time-frame it is lost, absent proof that the time-bar is tolled or that the estate is estopped to assert it. It is undisputed that the Putative Daughter did not file her claim either within four months from the notice to creditors or one year from the date of the Deceased's death.

a "willful misstatement of fact, or perjury" needed to give rise to estoppel. *Id.* (*citing* definition of judicial estoppel provided in ***Woods v. Woods***, 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982)). Second, even if Ms. Scaife could have initially relied upon the statements in the amended petition, she received a letter informing her of the need to establish paternity while she still had time to file a claim. *Id.* at 5. Thus, she "could not have justifiably relied upon the statements in the Amended Petition and the accompanying affidavits" to toll the statute of limitations. *Id.*

Any question as to whether the trial court misinterpreted or misapplied ***Scaife*** is a question of law that we consider de novo. We hold that the trial court did not misinterpret or misapply ***Scaife***. The court did not treat our characterization of the petition in ***Scaife*** as binding in all circumstances. It gave the Putative Daughter an opportunity to show that, in this particular case, the Administrators knew she was a child of the Deceased and listed her as a child, all the while knowing that they would later say she was not. The trial court concluded that the petition in this case, as with the petition in ***Scaife***, was a preliminary statement made subject to the facts to be developed in the probate case. The evidence does not preponderate against the trial court's factual finding that the petition was not made with an intent to deceive.

We further hold, by analogy to ***Scaife***, that the Putative Daughter could not have justifiably relied on the petition, even if it contained an intentional misrepresentation. The trial court did not articulate a specific finding of fact as to justifiable reliance; therefore, we must make our own finding based on the preponderance of the evidence. ***Kesterson v. Varner***, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005). The evidence preponderates in favor of finding that the Putative Daughter knew no later that November 2010 that she was not going to be treated as an heir unless she proved paternity. The trial court found her testimony to the contrary to be problematic in light of documents concerning the purpose of the meeting. Moreover, Ms. Gunn testified consistent with the documentation that the Putative Daughter was informed in November 2010 she would not be treated as an heir unless she established that she was a child of the Deceased. November 2010 was within the critical four-month period for filing a claim after the notice to creditors and well within one year of the Deceased's death.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Sonya Wyche. This case is remanded to the trial court, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE