IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 20, 2019 Session

## IN RE ESTATE OF RICKIE CHARLES VAUGHN

**Appeal from the Probate Court for Shelby County**
**No. D-14407-1       Kathleen N. Gomes, Judge**

_____

### No. W2018-01600-COA-R3-CV
_____

An alleged child of the decedent sought to establish paternity and thereby inherit through intestate succession.  The probate court concluded that the child should be excluded as an heir as a result of his failure to timely assert a claim.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., joined and KENNY ARMSTRONG, J., filed a separate opinion dissenting in part.

Laura L. Deakins and Michael E. Kenney, Memphis, Tennessee, for the appellant, Nolan Michael DeSoto.

Lynn W. Thompson, Memphis, Tennessee, for the appellees, Tangie Sue Phillips, Robert Earl Vaughn, Zenobia Ruth Vaughn, and Marjorie Ann Vaughn.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Rickie Charles Vaughn ("the Decedent") died intestate on July 11, 2012.  At the time of his death, the Decedent was not married and had no known children.  The Decedent was survived by six siblings: Dickie Vaughn, Robert Earl Vaughn, Marjorie[1] Ann Vaughn, Zenobia Ruth Vaughn, Tangie Sue Phillips, and Babe Renee Bordelon. Dickie was appointed Administrator of the Decedent's estate on July 18, 2012, and on August 27, 2012, Babe filed a disclaimer to any interest in the Decedent's estate.  Robert, Marjorie, Zenobia, and Tangie are the participating Appellees herein.

_____
[1] At some places in the record, the spelling of this name is presented as "Majorie."

As is pertinent to this appeal, Dickie filed a pleading in his capacity as Administrator on September 19, 2013 entitled "Administrator's Petition to Determine Heirship," that alleged that the Decedent had a putative son, Nolan Michael Desoto ("Mr. Desoto"). It is not disputed that Mr. Desoto was identified by DNA testing, with a 94.4% degree of certainty, to be the biological son of the Decedent. The record reflects that Mr. Desoto was on active duty with the U.S. Navy from November 19, 2012 until he was discharged on April 1, 2014. The record further reflects that Mr. Desoto was the subject of two previous adoptions, but that these adoptions had been vacated by a Mississippi court in July 2017.

On January 6, 2015, the Appellees filed a motion for summary judgment on the question of Mr. Desoto's heirship, and approximately two months later, Mr. Desoto submitted a letter with the court asking for direction on how to obtain an attorney. On April 8, 2015, counsel for Mr. Desoto filed a notice of appearance in the probate court but made no other filing.

On July 12, 2017, the Appellees filed a second motion for summary judgment. Through that motion and its accompanying papers, the Appellees specifically asserted that Mr. Desoto could not assert heirship because he had not done so within one year of the Decedent's death. On August 11, 2017, Mr. Desoto filed a response in opposition to the Appellees' July 12 motion. In a supplemental filing later submitted on November 20, 2017, Mr. Desoto argued that his military service from November 19, 2012 to April 1, 2014, and the corresponding authority of 50 U.S.C. § 3936(a),[2] tolled the applicable statute of limitations for asserting a claim to the Decedent's estate. Given the benefit of this tolling, he argued that the statute of limitations for his claim did not run until November 21, 2014. According to Mr. Desoto, he had timely asserted a claim through the "Administrator's Petition to Determine Heirship," which was filed on September 19, 2013. Although that petition had clearly been filed by the *Administrator*, not Mr. Desoto, Mr. Desoto submitted that his claim to the Decedent's estate had been made "by and through" the Administrator and the lawyers representing the Administrator.

By order entered on March 13, 2018, the probate court granted the Appellees' second motion for summary judgment. The court held that it did "not believe that the Administrator of an estate can assert someone else's claim to an estate" and further held

---

[2] 50 U.S.C. § 3936(a) provides as follows:

The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

- 2 -

that because Mr. Desoto had not timely asserted his claim, he was thereby "excluded as an heir." Within thirty days of the court's March 13 order, on April 12, 2018, Mr. Desoto filed a "Motion to Revise, and Alternatively, Motion for Permission to Seek Interlocutory Appeal and for Stay of Proceedings." The motion averred that the probate court had erred in its legal conclusion and requested that the court's ruling be revised. The probate court ultimately denied Mr. Desoto's April 12 motion on August 24, 2018, and on September 4, 2018, Mr. Desoto filed a notice of appeal.

## ISSUES PRESENTED

Although the Appellees raise as a preliminary issue whether this Court has subject matter jurisdiction to consider this appeal, Mr. Desoto only raises one substantive issue for our consideration: Whether the Probate Court erred in determining that, as a matter of law, the "Administrator's Petition to Determine Heirship" could not assert Mr. Desoto's interest in the estate because it was filed by an Administrator?

## STANDARD OF REVIEW

At issue on appeal is the probate court's March 13, 2018 order granting summary judgment. As this inquiry involves "purely a question of law," *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000), our standard of review is de novo, and we afford no presumption of correctness to the probate court's determination. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008) (citations omitted). A motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## DISCUSSION

Although Mr. Desoto attempts to appeal the probate court's decision excluding him as an heir, the Appellees have raised as an issue that this Court is without subject matter jurisdiction based on the alleged untimeliness of Mr. Desoto's notice of appeal. The Appellees' position is based on the argument that the March 13, 2018 order of summary judgment was final and appealable and that the April 12, 2018 motion to "revise" did not extend the time for filing a notice of appeal. This issue must be addressed as a threshold consideration before we can proceed any further.

Subject matter jurisdiction relates to the authority of a court to hear a matter. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). It cannot be conferred by appearance, plea, consent, silence, or waiver, *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999), and as such, we are required to

determine the question as an initial concern regardless of whether it was raised. *See* Tenn. R. App. P. 13(b).

Because the jurisdictional question involved here asks whether the appeal was timely filed, we turn to Rule 4(a) of the Tennessee Rules of Appellate Procedure, which contains a "mandatory and jurisdictional" time limit for filing a notice of appeal in civil cases. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004). Pursuant to that rule, "In an appeal as of right to the . . . Court of Appeals . . . the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). It should be noted, however, that another mechanism exists in the appellate rules to extend the time period for filing a notice of appeal. Specifically, pursuant to Rule 4(b), the following is provided:

> In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

Tenn. R. App. P. 4(b).

The timeliness of the appeal in this case requires us to consider two questions that have been the subject of dispute. First, was the probate court's March 13, 2018 order appealable so as to trigger the running of the time period for filing a notice of appeal under Rule 4(a)? If so, did Mr. Desoto's April 12, 2018 motion extend the time period for filing a notice of appeal? We turn first to the matter of the March 13, 2018 order. Pursuant to Rule 3(a) of the Tennessee Rules of Appellate Procedure, "every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right." Tenn. R. App. P. 3(a). Therefore, if the March 13 order represented a final judgment, it was appealable as of right. The controversy here surrounds the initial determination of finality.

Probate proceedings such as the present one "frequently contain multiple intermediate orders that are final with respect to discrete issues." *In re Estate of McCants*, No. E2017-02327-COA-R3-CV, 2018 WL 3217697, at *3 (Tenn. Ct. App. July 2, 2018). Indeed,

> an order is appealable in many instances notwithstanding the fact that the probate case has not definitively concluded. For example, when a claim filed against the estate is tried and resolved, "[a] party dissatisfied with the

outcome of a trial regarding a disputed claim must file a timely appeal without waiting for a final order closing the probate proceeding." *In re Estate of Trigg*, 368 S.W.3d 483, 497 (Tenn. 2012) (citation omitted).

*Id.* As we further elaborated in an opinion issued last year:

> [C]laims against an estate . . . may be finally resolved prior to the final order resolving all of the outstanding issues in an estate matter. According to the Tennessee Supreme Court, "[a] party dissatisfied with the outcome of a trial regarding a disputed claim must file a timely appeal without waiting for a final order closing the probate proceeding." *In re Estate of Trigg*, 368 S.W.3d 483, 497 (Tenn. 2012) (citing Tenn. Code Ann. §§ 30–2–315(a)(2), (c) (stating that when an exception to a claim is filed, the trial court should promptly "hear and determine all issues arising upon all the exceptions" and that "[a] judgment upon the findings of the court shall be entered in the court and from the judgment an appeal may be perfected within thirty (30) days from the date of entry of the judgment")). The Tennessee Supreme Court has recognized a similar rule applicable to claims in which no exception has been filed, explaining that "claims unexcepted to become the equivalent of judgments against the estate excepting of course that the right to an execution thereon does not follow" and the issue of the claim is immediately appealed as a final order, rather than an interlocutory order. *Warfield v. Thomas' Estate*, 185 Tenn. 328, 334–35, 206 S.W.2d 372, 375 (Tenn. 1947) (quoting Higgins' Administration of Estates in Tennessee, § 126(a), p. 97) ("[T]his claim was final in that it was unexcepted to within the time allowed by law, and there was nothing to be adjudicated"); see also *Needham v. Moore*, 200 Tenn. 445, 451, 292 S.W.2d 720, 723 (1956) ("When the time for filing exceptions has passed, the uncontested claim becomes final against the estate.").

*In re Estate of Meadows*, No. M2017-01062-COA-R3-CV, 2018 WL 1920378, at *4 (Tenn. Ct. App. Apr. 24, 2018). Under the holding of *In re Estate of Trigg* and its progeny, when the probate court adjudicates a claim against an estate, the aggrieved party "**must** file a timely appeal without waiting for a final order closing the probate proceeding." *In re Estate of Trigg*, 368 S.W.3d at 497 (emphasis added).

In this case, it is acknowledged that Mr. Desoto is "a child born out of wedlock, whose paternity was not adjudicated prior to the death of the father." *Bilbrey v. Smithers*, 937 S.W.2d 803, 808 (Tenn. 1996). In *Bilbrey*, the Tennessee Supreme Court held that if a child's paternity was not adjudicated prior to the father's death, then that child could "establish the right to inherit by intestate succession by asserting that right against the estate of the deceased owner of the property in which an interest is claimed within the time allowed for creditors to file claims against the estate and by establishing paternity by

clear and convincing proof." *Id.* With this in mind, it is evident that an assertion of heirship to inherit by intestate succession is properly classified as a "claim" against the estate. By excluding Mr. Desoto as an heir through its March 13, 2018 order, the probate court denied a claim of heirship. Under the previously-cited authority, specifically the referenced holding from *In re Estate of Trigg*, the March 13 order was final and appealable when the probate court adjudicated that claim.

With the finality question addressed, we now consider whether Mr. Desoto's April 12, 2018 motion extended the time for filing a notice of appeal. As previously noted, certain post-trial motions, including motions to alter or amend, toll the commencement of the time for an appeal. *See* Tenn. R. App. P. 4(b). It is clear that the filing of any post-trial motion will not suffice, as echoed by Rule 59.01 of the Tennessee Rules of Civil Procedure, which provides as follows:

> Motions to which this rule is applicable are: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment. *These motions are the only motions contemplated in these rules for extending the time for taking steps in the regular appellate process.* Motions to reconsider any of these motions are not authorized and will not operate to extend the time for appellate proceedings.

Tenn. R. Civ. P. 59.01 (emphasis added).

Although Mr. Desoto's April 12, 2018 motion was styled as a "Motion to Revise, and Alternatively, Motion for Permission to Seek Interlocutory Appeal and for Stay of Proceedings," we do not merely look to the heading to see whether it constitutes the type of motion that would effectively extend the time for an appeal. Rather, this Court is to consider the substance of the motion. *See Goetz v. Autin*, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at *5 (Tenn. Ct. App. Feb. 10, 2016) (noting that courts "must parse through the body of the motion to determine whether it requests the sort of relief available through one of the four motions specified in the procedural rules"). As the Tennessee Supreme Court has cautioned:

> Requiring courts to consider the substance of a post-trial motion, rather than its form, is consistent with the rules of civil procedure. Rule 8.05, Tenn. R. Civ. P., explicitly states that "[n]o technical forms of pleading *or motions* are required." (Emphasis added.) Moreover, allowing the form of a motion to control its substance could result in the dismissal of many appeals and would, in turn, defeat the mandate of Rule 1, Tenn. R. App. P., which instructs that the rules of appellate procedure are to be "construed to

secure the just, speedy, and inexpensive determination of every proceeding on its merits." Accordingly, we hold that when determining whether a post-trial motion is one of those designated by the rules of civil and appellate procedure as tolling commencement of the time for filing a notice of appeal, courts must consider the substance of the motion, rather than its form.

*Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998).

The substance of Mr. Desoto's April 12 motion largely called for the probate court to "revise" its March 13, 2018 order for the purpose of correcting an alleged legal error.[3] Specifically, whereas the probate court's order excluded Mr. Desoto as an heir, the April 12 motion submitted that the probate court "should revise its prior ruling and permit Mr. Desoto to assert his legal rights as the only biological child to Mr. Rickie Vaughn's estate." According to Mr. Desoto, the probate court "overlooked" the pronouncement of the Legislature and misapplied the law, thereby justifying a revision of the court's order. Explaining his position at the outset of his argument in his motion, Mr. Desoto stated as follows: "Respectfully, Mr. Desoto submits that the Court[] erred in its purely legal conclusion that an administrator of an estate cannot assert someone else's claim against an estate and that revising the Court's March 13, 2018 Order is necessary to comport with the overall statutory scheme and precedential authority governing these types of issues." The essence of the argument—that the trial court's ruling should be revisited due to an alleged clear misapplication of law—is one that is typical of motions to revise under Rule 54.02 of the Tennessee Rules of Civil Procedure and motions to alter or amend under Rule 59.04. While these rules are obviously not synonymous, "they are similar in intent and operation." *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000). Specifically, "[b]oth rules . . . afford litigants a limited opportunity to readdress previously determined issues and afford trial courts an opportunity to revisit and reverse their own decisions." *Id.*

The difference between Rule 54.02 motions to revise and Rule 59.04 motions to alter or amend is one of timing. "Rule 59.04 addresses final judgments and requires a motion to alter or amend to be made within 30 days of the entry of judgment. In contrast, Rule 54.02 addresses interlocutory orders." *Id.* Under Rule 54.02, a trial court has "the privilege of reversing itself up to and including the date of entry of a final judgment." *Id.* (quoting *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 653 (Tenn. Ct. App. 1993)).

In this case, Mr. Desoto's April 12 motion specifically invoked Rule 54.02 and was brought as a "motion to revise," as opposed to being denominated as a motion to alter or amend under Rule 59.04. This labeling was grounded in Mr. Desoto's mistaken

---

[3] The motion was brought pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure to "revise" the probate court's March 13 order, not to "finalize" said order pursuant to the same rule.

understanding that the probate court's order was not final. Indeed, Mr. Desoto's motion actually referenced the type of motions available under both Rules 59.04 and 54.02, seemingly acknowledging their similarity in substance, but it ultimately invoked Rule 54.02 based on Mr. Desoto's understanding of finality. In relevant portion, the motion reads as follows:

> The Tennessee Rules of Civil Procedure permit motions "to alter or amend" a final judgment pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure and motions "to revise" a non-final partial judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Because Rule 59.04 deals only with final judgments, which we do not have in this case, the Court must consider Mr. Desoto's motion under Rule 54.02.

(internal citations omitted).

Under the circumstances of this case, Mr. Desoto's mistaken understanding as to finality should not prevent his motion from being construed and treated as a proper motion to alter or amend. First, it should be emphasized that the April 12 motion was brought within the time parameters for a Rule 59.04 motion. Second, and as has already been discussed, the substance of the requested relief is qualitatively similar to the type of relief available under Rule 59.04.

Our case law is not devoid of examples where technical differences in these specific rules have gone unheeded by parties and yet courts have still considered the motions in their proper light, irrespective of a parties' labeling. For example, as is evident from a recent opinion and the cases cited therein, this Court has treated motions filed under Rule 59.04 as motions under Rule 54.02 if the actual timing of the motion made Rule 54.02, as opposed to Rule 59.04, the proper vehicle for seeking redress:

> [E]ven though one [motion] was entitled "Motion to Alter or Amend" and the other "Motion" likewise sought alteration of the trial court's oral ruling, we construe these as motions to revise a non-final decision pursuant to Rule 54.02. *Johnson v. Tanner-Peck, L.L.C.*, No. W2009-02454-COA-R3-CV, 2011 WL 1330777, at *16 n.6 (Tenn. Ct. App. Apr. 8, 2011) (explaining that this Court treated a motion to alter or amend as a motion to revise under Rule 54.02 because the order sought to be amended was not a final order); *Howell v. Baptist Hosp.*, No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *8 n.9 (Tenn. Ct. App. Jan. 14, 2003) (noting that the trial court properly considered a "Motion to Alter or Amend" filed pursuant to Rule 59.04 as a motion to revise a non-final judgment under Rule 54.02 because the order was not final when the motion was filed); *see also Weaver v. McCarter*, No. W2004-02803-COA-R3-CV, 2006 WL 1529506, at *7 (Tenn. Ct. App. June 6, 2006) (treating a "motion to reconsider" a non-final

decision as a motion to revise under Rule 54.02). Thus, Mother's pre-judgment motions were not Rule 59 post-trial motions.

*Hibbens v. Rue*, No. E2014-00829-COA-R3-CV, 2015 WL 3643421, at \*5 (Tenn. Ct. App. June 12, 2015).

It stands to reason that the same type of treatment, albeit in reverse, should be given here. Obviously, Mr. Desoto specifically denominated his motion under Rule 54.02 as opposed to under Rule 59.04, but that was due to his mistaken understanding of the finality of the court's order.[4] That mistaken understanding notwithstanding, having been filed within the time parameters of Rule 59.04 and having sought the same type of relief available under Rule 59.04 motions,[5] Mr. Desoto's April 12 motion should have, under the circumstances, been treated as a motion to alter or amend. It is apparent that Mr. Desoto would have formally denominated the motion as one under Rule 59.04 had he understood the probate court's order to be final. But putting the label aside, he essentially sought to have the order reversed on account of an alleged error of law.[6] As emphasized, that type of request is amenable to consideration under Rule 59.04, and the motion was not belated within the context of that rule.

---

[4] This entire situation could have perhaps been avoided if the probate court, as is done by the circuit and chancery courts when they make interlocutory orders final judgments, had included the certification language from Rule 54.02 of the Tennessee Rules of Civil Procedure. Although certain probate orders, like the March 13, 2018 order, are undoubtedly final and appealable under existing case law in the absence of such a certification, adding such language, even if superfluous, would clearly signal to the parties that the judgment is final.

[5] The dissent maintains that we erred in concluding that the relief requested by Mr. Desoto is qualitatively similar to the type of relief available under Rule 59.04, and notes that Mr. Desoto's April 12 motion requested relief unavailable under Rule 59.04, such as an alternative motion for permission to seek an interlocutory appeal. No doubt, *some* of Mr. Desoto's requested relief from the April 12 document is not amenable to consideration under a motion to alter or amend, and further, it is clear that some of his adopted terminology, such as his request to "revise," is specifically tailored to Rule 54.02, not Rule 59. With that said, and as we have already noted, Rule 59.04, like 54.02, allows trial courts an opportunity to revisit and reverse their own decisions. Indeed, a motion to alter or amend can allow a trial court to correct errors of law, *see Vaccarella v. Vaccarella*, 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001), and here, even the dissent acknowledges that the "gravamen of Mr. DeSoto's motion is that the trial court erred in its legal analysis." We certainly agree with this characterization, and it complements our conclusion that the substance of the April 12 motion requested relief that is qualitatively similar to a motion under Rule 59. Although the dissent criticizes our alleged failure to parse the specifics of Mr. Desoto's motion and asserts that Mr. Desoto's motion rested purely on theories previously not asserted or already rejected, we are of the opinion that the dissent reads the motion too restrictively. By specifically criticizing the manner in which the probate court applied a prior decision of this Court, for instance, Mr. Desoto "arguably also requested that the trial court correct a clear error of law." *Goetz*, 2016 WL 537818, at \*6.

[6] Mr. Desoto's motion emphasized that a correction of the alleged error would help "avoid an unnecessary appeal." We note that the prevention of unnecessary appeals is the purpose of Rule 59 motions, including motions to alter or amend. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012).

Because we are of the opinion that the April 12 motion should have been construed as a motion to alter or amend, it follows that the motion extended the time for filing a notice of appeal. The motion was ultimately resolved on August 24, 2018, making Mr. Desoto's September 4, 2018 notice of appeal timely. Accordingly, this Court has jurisdiction to resolve the merits of the appeal.

Having concluded that we have jurisdiction, we now shift our discussion to consider whether the probate court erred in holding that Mr. Desoto's claim was untimely. To begin, we look to Tennessee Code Annotated section 31-2-105, which provides instruction as to how a non-marital child can establish the right to inherit by intestate succession. Pursuant to that provision, if paternity was not adjudicated before the death of a father, it may be "established thereafter by clear and convincing proof." Tenn. Code Ann. § 31-2-105. At the time of the Decedent's death in this case, this statute did not specify the period within which a putative child must seek a determination of paternity by the requisite proof. However, as noted previously in this opinion, through the Tennessee Supreme Court's decision in *Bilbrey*, litigants were directed to follow the limitation period applicable to creditor claims:

> [A] child born out of wedlock, whose paternity was not adjudicated prior to the death of the father, can establish the right to inherit by intestate succession by asserting that right against the estate of the deceased owner of the property in which an interest is claimed within the time allowed for creditors to file claims against the estate and by establishing paternity by clear and convincing proof.

*Bilbrey*, 937 S.W.2d at 808.

As this Court later explained:

> [Tennessee Code Annotated section 31-2-105] required judicial interpretation because it did not specify exactly how much time after the death of a father his putative children should be allowed to have to obtain an adjudication of paternity "by clear and convincing proof." The Tennessee Supreme Court determined that the term "thereafter" could not be unlimited or uncertain, for if it were, it could disturb rights of inheritance that had already vested in the decedent's other heirs. *Bilbrey v. Smithers*, 937 S.W.2d at 807. The court concluded, after considering the law of real property, or intestate succession, and of equal protection, that the best approach would be to tie the time limits applicable to the establishment of paternity by non-marital children to those applicable to creditors of the decedent's estate. *Bilbrey v. Smithers*, 937 S.W.2d at 808.

- 10 -

Under current law, creditors must file claims against the estate of a decedent within four months of the date on which the statutorily-required Notice to Creditors is published or posted, or else their claims are forever barred. *See* Tenn. Code Ann. § 30-2-306(b) and § 30-2-307(a). If the creditor does not receive actual notice of the Notice to Creditors, the creditor may not be bound by the four-month deadline, but must still file a claim within one year of the date of the decedent's death in order for the claim to be adjudicated. The *Bilbrey v. Smithers* court declared that these same deadlines should apply to claims of paternity by putative children in attempts to share in the estate of an intestate father.

*Locke v. Estate of Rose*, Nos. M2012-02508-COA-R3-CV, M2012-01314-COA-R3-CV, M2012-02504-COA-R3-CV, 2014 WL 2999739, at *5 (Tenn. Ct. App. June 30, 2014).[7]

The application of these deadlines is illustrated by a number of this Court's decisions, including the decision in *In re Estate of Bennett*, No. E2004-02007-COA-R3-CV, 2005 WL 2333597 (Tenn. Ct. App. Sept. 23, 2005). In that case, the decedent died intestate in April 2002, but an alleged daughter of the decedent, Angela Clabough, did not file a claim against the estate until October 2003. *Id.* at *1. The trial court held that Ms. Clabough's claim to share in the decedent's estate was time-barred, *id.* at *2, and when the matter was appealed, we agreed. In explaining our decision, we stated as follows:

Clabough, who was required to proceed as a creditor of the estate, had a maximum of one year from the date of the decedent's death in which to file her claim against the estate. Because she failed to do so, the Chancery Court correctly determined that her claim was time barred.

*Id.* at *5.

In the present case, the Decedent died on July 11, 2012. Mr. Desoto did not thereafter submit a claim for heirship within the applicable time period. However, as is relevant to the primary dispute herein, it is Mr. Desoto's contention that a timely assertion of paternity was made through the "Administrator's Petition to Determine Heirship," which was filed September 19, 2013. This argument is essentially predicated on a couple of sub-arguments: (1) that Mr. Desoto is entitled to rely on a pleading filed

---

[7] As currently enacted, effective July 1, 2017, a limitation period is now specifically set as a matter of statute. *See* Tenn. Code Ann. § 31-2-105 (providing that paternity may be established after the death of the father but only if an assertion of paternity is made within the earlier of (a) "[t]he period prescribed in the notice published or posted in accordance with § 30-2-306" or (b) "One (1) year after the father's death").

by the *administrator* to assert his rights and (2) that the administrator is entitled to receive the benefit of the tolling available to Mr. Desoto for his active service in the military.

The probate court ultimately rejected the contention that a timely assertion of paternity had been made, stating that it did "not believe that the Administrator of an estate can assert someone else's claim to an estate." We find no basis to disturb the probate court's ruling. As explained in further detail below, we are aware of no authority that endorses the proposition that an administrator can assert a non-marital child's claim to establish paternity for purposes of intestate succession.

At the outset, we note that *Bilbrey* and other cases speak to whether the *non-martial child/putative child* has timely asserted a claim for paternity after a father's death. Indeed, as was stated in one case from the Tennessee Supreme Court, "**If a child** born out of wedlock **asserts his status** as a child of a decedent and a corresponding right to inherit by intestate succession within the time allowed for creditors to file claims against the decedent's estate, the claim will not be barred by any statutory limitations period." *Lanier v. Rains*, 229 S.W.3d 656, 662 (Tenn. 2007) (emphases added). *See also Bilbrey*, 937 S.W.2d at 808 (holding that a "child born out of wedlock" can establish the right to inherit by asserting that right against the estate); *Locke*, 2014 WL 2999739, at *5 (discussing *Bilbrey* and the corresponding limitation period that should apply to "claims of paternity by putative children"); *In re Estate of Snapp*, No. E2009-00551-COA-R3-CV, 2010 WL 1924017, at *3 (Tenn. Ct. App. May 13, 2010) ("It is well settled that non-marital children claiming a share in an estate must file their claims within the one-year statute of limitations."). On their respective faces, these decisions suggest, as is logical, that a claim to establish paternity in order to share in the intestate estate belongs to the putative child. Although this much should be fairly apparent, the contention essentially advanced by Mr. Desoto here is that it is nonetheless permissible for an assertion of paternity to be made by an administrator *on behalf* of a non-marital child to whom the claim belongs.

In an effort to substantiate his position, Mr. Desoto relies in large part on this Court's decision in *Glanton v. Lord*, 183 S.W.3d 391 (Tenn. Ct. App. 2005). Mr. Desoto specifically cites to *Glanton* to support his assertion that "procedural technicalities" and the "formality of a filing" are not significant. Although *Glanton* does contain pronouncements disclaiming formalism, in no way does it support the notion that an administrator may validly file a claim to establish paternity on behalf of a putative child claimant in the absence of the timely raising of the issue by the putative child.

In *Glanton*, it was argued that certain disputed heirs could not inherit because they had allegedly failed to assert a right to inherit within the relevant time period. *Id.* at 396. However, when faced with this argument, the disputed heirs pointed out that an initial complaint filed by separate parties, *as well as the disputed heirs' own answer*, had raised the paternity claim and corresponding inheritance claim. *Id.* at 396-97. According to this

Court, it was of no moment that the disputed heirs' answer, as opposed to a separate complaint or counterclaim, was the vehicle for raising the paternity issue:

Neither *Bilbrey v. Smithers* nor its progeny require that a non-marital child's assertion of paternity and a corresponding right to inherit by intestate succession must be made in a separate complaint or a counterclaim in order to be valid. While it is true that the non-marital child in *Bilbrey v. Smithers* asserted his claim in a complaint instituting a lawsuit rather than in an answer to a complaint, there is no suggestion in *Bilbrey v. Smithers* that this procedural detail affected the outcome of the case. *Bilbrey v. Smithers* requires only that non-marital children "assert the right to inherit" in some proceeding leading to a "judicial determination" of paternity. *Bilbrey v. Smithers,* 937 S.W.2d at 807–08. It does not require that the assertion be made in a particular proceeding or that it be made in any particular form.

In short, we do not construe *Bilbrey v. Smithers* to impose a formalistic pleading requirement that would force non-marital children to file a separate action or a counterclaim when the issue has already been raised in the complaint instituting the lawsuit and the issue has been joined in an answer filed by the non-marital children seeking to inherit. Thus, it is irrelevant that the Disputed Heirs raised the issue by way of an answer rather than by filing a separate complaint or a counterclaim. *Bilbrey v. Smithers* requires only that a non-marital child seeking to inherit by intestate succession from or through his or her father raise the issue of paternity and a corresponding right to inherit in some proceeding which affords the other putative heirs notice and an opportunity to be heard on the issue. Because the Disputed Heirs met this requirement, we reject the Plaintiff Cousins' argument that *Bilbrey v. Smithers* bars their claim to inherit from Uncle Simon.

*Id.* at 397.

It is true that the paternity issue in *Glanton* was initially injected into the suit by someone other than the disputed heirs, but there is no indication that such a fact was itself sufficient. What *Glanton* stands for is simply this: the disputed heirs were not required to formally file a separate complaint when *they raised the issue* by way of an answer in response to the initial complaint. Again, as we noted in that decision, "*Bilbrey v. Smithers* requires only that a **non-marital child** seeking to inherit by intestate succession from or through his or her father **raise the issue** of paternity and a corresponding right to inherit in some proceeding which affords the other putative heirs notice and an opportunity to be heard on the issue." *Id.* (emphases added). *Glanton* does not contain any support for the notion that non-marital children must not actually timely raise the

- 13 -

issue of paternity of themselves;[8] it simply relaxes the procedural formality pursuant to which *they* may do so.

Mr. Desoto also relies on this Court's decision in *In re Estate of Smith*, No. E2012-00995-COA-R3-CV, 2012 WL 6727408 (Tenn. Ct. App. Dec. 28, 2012). To some degree, Mr. Desoto appears to embrace the *Smith* case for similar reasons that he embraces *Glanton*. That is, he seems to be urging this Court to adopt a reasoning that focuses on the substance of a claim and relegates as unimportant any formality surrounding the claim's assertion, including who filed it. For example, according to Mr. Desoto, the *Smith* case "indicates that a court's analysis should consider the *substance* of an assertion of rights, without thought as to *who* filed it." Respectfully—and as further explained below—we do not glean this principle from *Smith*. A claim must be asserted by someone with authority to raise it. Such a proposition is not one that should go "without thought."

What Mr. Desoto ultimately seems to be suggesting is that, if the substance of the "Administrator's Petition to Determine Heirship" is considered in this case, it may be considered to constitute a timely assertion of *his* rights, regardless of the fact that the pleading was filed by the Administrator, not him. He suggests such is the analysis that follows from *Smith*. We respectfully disagree. The *Smith* case does not stand for this proposition, and the opinion in no way endorses the notion that an administrator can, for purposes of satisfying the applicable limitation period, file a claim on behalf of a putative child claimant. To understand why, it is helpful to briefly consider the facts of that case.

In *Smith*, the decedent died on May 11, 2010. *Id.* at *1. A few months later, on August 24, 2010, the administrators in the case filed their petition for intestate administration. *Id.* Within their petition, the administrators listed "Sonya Wych[e], Adult Daughter, Address unknown" as one of the heirs. *Id.* Notice to creditors subsequently published on August 27 and September 3, 2010, and the case was later referred to the clerk and master for a hearing concerning the parentage of some of the children who claimed to be heirs. *Id.* Although it was subsequently learned that Ms. Wyche, a putative daughter of the decedent, had filed a separate action to establish paternity, the clerk and master ruled that her claim was barred because it was filed more than a year after the decedent's death. *Id.* at * 1-2. A hearing was subsequently held in the trial court after the putative daughter filed objections to the clerk and master's report,

---

[8] In a footnote to his principal appellate brief, Mr. Desoto candidly admits that "the facts of Glanton indicate that there was some pleading filed by the non-marital children themselves that is not present in the instant case." Although Mr. Desoto submits that this should be regarded as a "distinction without a difference," those specific facts are not to be glossed over. In *Glanton*, the disputed heirs filed a pleading that timely asserted the paternity issue. Had they not, they would not have had a valid claim. Of course, as explained herein, it was incumbent on *them* to assert the issue. There is no holding in *Glanton* to the contrary.

but that hearing was limited to the issue of whether the administrators were estopped to assert the untimeliness of the putative daughter's claim. *Id.* at *2.

This last point is a significant one as it relates to Mr. Desoto's argument. It is perhaps true to a degree that the *Smith* court looked at the so-called "substance" of the administrators' August 24, 2010 petition. Yet, the purpose of that inquiry was not to see whether the administrators' petition, which identified the putative daughter as an heir, somehow constituted a timely assertion of rights on behalf of the putative daughter. Indeed, the entire premise of the inquiry followed from the understanding that the putative daughter's claim had been untimely filed. Properly understood, the *Smith* case simply shows that the August 24, 2010 petition was looked at in furtherance of an estoppel argument raised by the putative daughter, which was rejected. *Id.* at *4 ("The Putative Daughter raises issues as to whether the court erred in finding that the petition deceived her into believing that she did not need to file a claim.").

In addition to the above authorities, Mr. Desoto relies on the opinion authored in *In re Estate of Armstrong*, 859 S.W.2d 323 (Tenn. Ct. App. 1993), as specific support for his contention that an administrator can raise a claim on behalf of a putative child. We disagree with Mr. Desoto that this case supports his position. We further note that, at oral argument, his counsel acknowledged that the opinion did not support the contended proposition regarding an administrator's authority as squarely as she would have liked.

The controversy in *Armstrong* surrounded a reputed half-sister of the decedent. As we later summarized in a subsequent opinion discussing *Armstrong*, "[The half-sister] was born to her mother and her mother's husband . . . during their marriage, but the 'talk' in the community was that her mother had an affair with Clyde Wells, who was also [the decedent's] father, and that he was [the half-sister's] biological father." *Coyle v. Erickson*, No. E2010-02585-COA-R9-CV, 2011 WL 3689157, at *8 (Tenn. Ct. App. Aug. 24, 2011). It is true, as counsel for Mr. Desoto pointed out at oral argument, that the *Armstrong* opinion outlined facts showing that an administrator initially filed a petition seeking a determination of heirs of the decedent. *In re Estate of Armstrong*, 859 S.W.2d at 324. It is further true that a trial of the matter eventually ensued after the filing of that action, resulting in a determination of heirship regarding the reputed half-sister of the decedent. *Id.* Nevertheless, the opinion does not specifically hold that the administrator had authority to assert a claim on behalf of the putative half-sister. That specific proposition was never discussed, nor did any issue ever appear to be raised as to whether the putative half-sister timely asserted her rights. As we have noted, counsel for Mr. Desoto has acknowledged that the *Armstrong* opinion is not squarely on point for the legal proposition advanced by Desoto on appeal, and ultimately, Mr. Desoto's argument appears to be tied to a supposed implication derived from the following two facts: (a) an administrator initially filed a pleading in *Armstrong* and (b) a determination of the merits later ensued.

- 15 -

"It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court." *Staats v. McKinnon*, 206 S.W.3d 532, 550 n.41 (Tenn. Ct. App. 2006). Moreover, the facts from *Armstrong* do not suggest that the half-sister never timely asserted a claim for paternity herself. No doubt, the opinion describes the administrator as initially filing an action for declaratory judgment, but the facts in no way indicate that the reputed half-sister did not subsequently assert her rights in a timely manner. In fact, the only suggestion is to the contrary, at least as to the base assertion of rights.[9] There are several references, for example, naming the half-sister as "the claimant" and stating that she had "proven" her case. *See In re Estate of Armstrong*, 859 S.W.2d at 326-327. The opinion does not exactly shed light on the procedural manner in which the half-sister asserted her claim before later proving it, but the included facts would indicate that she did so.[10] All that is required pursuant to *Bilbrey* is that "a non-marital child . . . raise the issue of paternity and a corresponding right to inherit in some proceeding which affords the other putative heirs notice and an opportunity to be heard on the issue." *Glanton*, 183 S.W.3d at 397. Here, of course, Mr. Desoto did not timely assert a claim to establish paternity and to inherit.

In closing, we briefly address a statutory argument advanced by Mr. Desoto. As we understand his argument, Mr. Desoto submits that Tennessee Code Annotated section 30-2-307(f) and current Tennessee Code Annotated section 30-2-313(b) are evidence of a policy under Tennessee law that allows personal representatives to file claims on behalf of third parties. Initially, we note that the statutory provisions relied upon were enacted after the death of the Decedent and after the filing of the "Administrator's Petition to Determine Heirship" and therefore of no import to this case. In any event, it is unclear how the cited statutes provide any support for the proposition that an administrator can file a paternity claim on behalf of the putative child claimant.

> Tennessee Code Annotated section 30-2-307(f) provides as follows:
> (f) If a claim filed against the decedent's estate is filed by a personal representative of the decedent's estate, the personal representative must provide the clerk of the court with the name and current mailing address of each residuary beneficiary of the decedent's estate at the time the claim is filed.

Tenn. Code Ann. § 30-2-307(f). Moreover, Tennessee Code Annotated section 30-2-313(b) currently provides in pertinent part that:

> (b) If a personal representative of the decedent's estate files a claim against the estate of the decedent, the clerk of the court, within five (5) days after

---

[9] Whether the assertion of rights was untimely or not is not considered.

[10] We note that in a subsequent opinion discussing *Armstrong*, we wrote that the "child herself ultimately sought to establish another as her father." *Coyle*, 2011 WL 3689157, at * 8.

the filing of a claim and the entry thereof in the claim book as provided in §
30-2-312, shall give written notice to each residuary beneficiary of the
decedent's estate of the filing of the claim, by mailing each a true and
correct copy of the claim.

Tenn. Code Ann. § 30-2-313(b). Although these statutes indicate that personal
representatives may file a claim against the estate, they do not indicate that personal
representatives may file a claim against an estate on behalf of another. As argued by the
Appellees, it appears that the requirements in these statutes regarding notice to
beneficiaries are intended to prevent personal representatives from paying their own
claims without notice to other interested parties.

To conclude, we find no support for Mr. Desoto's position in this appeal. He is
not entitled to rely on the Administrator's filing, and his claim being untimely, the
probate court's grant of summary judgment was not in error. We accordingly affirm.

## CONCLUSION

For the foregoing reasons, the judgment of the probate court is hereby affirmed.

_____
ARNOLD B. GOLDIN, JUDGE