FILED
02/09/2026
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2025 Session

## MONA WORD v. KNOX COUNTY ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-66-17  William T. Ailor, Judge**

_____

**No. E2024-01328-COA-R3-CV**

_____

Plaintiff brought claims against Knox County and the County Clerk based on allegedly discriminatory employment practices.  The trial court determined that Plaintiff committed serious discovery violations and imposed as a sanction the exclusion of certain evidence. With this evidence excluded, the trial court granted summary judgment to the Defendants. Plaintiff appeals, challenging the discovery sanction, the trial court's conclusion under the Tennessee Human Rights Act that the continuing violation doctrine did not apply, the trial court's conclusion that the Clerk was not individually liable, and the award of attorney's fees against the Plaintiff and her attorney.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, P.J., E.S., joined.

George Underwood, Knoxville, Tennessee, and Travis Hawkins, Chattanooga, Tennessee, for the appellant, Mona Word.

David S. Wigler and Rachel K. Harrison, Knoxville, Tennessee, for the appellees, Knox County, Tennessee, and Foster D. Arnette, Jr.

## OPINION

### I.

Mona Word brought numerous claims for relief stemming from alleged racially discriminatory acts committed by Foster Arnett, who was the Knox County Clerk.  In particular, she focuses on Mr. Arnett's failure to publicly post supervisory position

openings which were subsequently filled by Caucasian males and on Mr. Arnett's holding an allegedly retaliatory meeting with her after she lodged complaints. Because Ms. Word made false representations in discovery, the trial court excluded evidence about the allegedly retaliatory meeting and awarded attorney's fees.

With the evidence excluded, the Defendants successfully moved for summary judgment. They also sought sanctions against Ms. Word's attorney pursuant to Tennessee Rule of Civil Procedure 11. The court granted the sanctions based on the answers to certain statements in the Defendants' statements of undisputed material facts. Ms. Word appeals, raising four issues: (1) the exclusion of evidence of the meeting, (2) the failure to apply the continuing violations doctrine under the Tennessee Human Rights Act (THRA), (3) the dismissal of Mr. Arnett in his individual capacity, and (4) the sanctions for discovery violations and Rule 11 violations.

As an overview of our decision, we conclude that any challenge to the exclusion of the allegedly retaliatory meeting was waived below. Without the meeting, there is no act falling within the statutory limitations period, and Ms. Word offers no argument that the continuing violations doctrine can apply without the excluded evidence. Furthermore, Ms. Word has waived on appeal any challenge to the dismissal of Mr. Arnett in his individual capacity, to the fees imposed for the discovery violation, and to the Rule 11 sanctions by failing to present an argument. Accordingly, the judgment is affirmed. Having considered the Defendants' argument for attorney's fees on appeal, pursuant to the exercise of our discretion we decline to award attorney's fees.

Turning to the particulars, according to the undisputed statement of material facts, Ms. Word was first hired as an employee in the Knox County Clerk's office in 1997. In 2008, Foster Arnett became the Knox County Clerk. Ms. Word alleges that she was demoted in 2009 and 2011. She also alleges that the Clerk's office failed to promote her because of her race in 2014 and March 2015, when supervisory positions came open, were not posted publicly, and were filled with Caucasian males.

Ms. Word's personnel record reveals two policy infractions. In 2012, Ms. Word used a county-issued computer to exchange personal emails and to engage in online shopping. Although no disciplinary action was taken, a note and a copy of the emails were included in her personnel file.

On October 27, 2015, Ms. Word, while answering an internal telephone call within the Clerk's office, did not use the script Mr. Arnett had mandated in answering the telephone. Ms. Word was given a verbal reprimand on October 28, 2015. The next day, she complained to the human resources director regarding the allegedly discriminatory hiring practice of not posting supervisory openings and of filling the posts with Caucasian men.

On November 2, 2015, Ms. Word met with Mr. Arnett and the human resources director. The parties offer divergent understandings of the general nature and precise details of this meeting. Ms. Word alleges that it was for the purpose of intimidation and retaliation, while Mr. Arnett asserts it was to discuss Ms. Word's concerns. In this meeting, Mr. Arnett brought up the 2012 personal emails and online shopping. According to Ms. Word's deposition and discovery materials, Mr. Arnett told her "he had dirt on [her] in some emails that he could take to the news that would embarrass [her] and [her] church." She asserted that he told her that he "didn't know what he wanted to do with this information," and that "he threatened and said that he could embarrass" her. According to Mr. Arnett's deposition testimony, he referenced the emails in order to demonstrate that his handling of the matter showed no animus toward Ms. Word. Mr. Arnett's stated rationale for bringing up the past emails was that Ms. Word "had stated that [Mr. Arnett] had something against her or [he] didn't like her" but that he had merely "pointed out that that was not the case, that [he] was aware of these other two instances, and it was handled in-house" rather than becoming a disciplinary matter. He told Ms. Word that, had there instead been a disciplinary action, "it would have become a matter of public record. Had that happened, it might have gotten to the newspaper." He denied threatening to embarrass her but acknowledged having told her, in his words, "that if it were to get out, it would be embarrassing to her church family." The human resources director testified that Mr. Arnett told Ms. Word that "had it been made public, it would have been embarrassing, but he chose not to do that and left it in her file."

According to the statement of undisputed material facts, Ms. Word alleged no adverse employment acts after the November 2 meeting. She saw Mr. Arnett infrequently after the October 28 verbal reprimand, and she left to take a higher-paying position. Ms. Word resigned on September 22, 2016, nearly one year later, submitting a letter of resignation which stated, "the last eight years of my nineteen year tenure [have] been a great experience."

Ms. Word filed suit against Knox County, the Knox County Clerk's office, and Mr. Arnett in his official and individual capacity in chancery court on October 27, 2016. Because Ms. Word made claims under the Government Tort Liability Act (GTLA), the Defendants transferred the matter to the circuit court. *See* Tenn. Code Ann. § 29-20-307 ("The circuit courts shall have exclusive original jurisdiction over any action brought under [the GTLA] and shall hear and decide such suits without the intervention of a jury."). They then moved for and were granted judgment on the pleadings as to all counts.

Ms. Word appealed to this court. *Word v. Knox Cnty.* (*Word I*), No. E2018-01843-COA-R3-CV, 2020 WL 838534 (Tenn. Ct. App. Feb. 20, 2020). Noting that the complaint in this case was "not a model of clarity," this court quoted the grounds for relief from the complaint as follows:

<u>COUNT ONE</u>

- 3 -

47. Defendant Knox County violated the Tennessee Human Rights Act and discriminated against the African American Plaintiff and other African Americans through disparate impact race discrimination and/or by creating an intimidating hostile work environment through supervisor Knox County Clerk Foster Arnett's harassing actions against Plaintiff because of her race, which included supervisor Arnett taking tangible adverse employment action against Plaintiff.

## COUNT TWO

48. Defendant Knox County violated the Governmental Tort Liability Act through its negligence in breaching its duty to follow and implement and not ignore its equal opportunity vacancy advertising policy so qualified African Americans as well as other races (both inside Knox County government and outside) can receive objective consideration of their qualifications before vacancies in the Knox County Clerk Office and in the Knox County government are filled.

## COUNT THREE

49. Defendant Arnett violated the retaliation common law and statutory law through his actions against the whistle blower Plaintiff Word including the November 2, 2015 intimidation and harassment with malice conduct causing her constructive discharge.

## COUNT FOUR

50. Defendant Arnett intentionally and with malice discriminated against Plaintiff Word because of her African American race in violation of the Tennessee Human Rights Act.

## COUNT FIVE

51. Defendant Arnett intentionally engaged in outrageous conduct exceeding the bounds of decency in civilized society against Plaintiff Word which caused her severe emotional distress.

## COUNT SIX

52. Defendants Arnett & Knox County negligently caused Plaintiff Word severe emotional distress through Arnett's outrageous conduct against her; for which all Defendants are jointly and severally liable.

## COUNT SEVEN

- 4 -

53. <u>Defendant Arnett was negligent</u> when he breached his duty to provide African Americans equal opportunity to apply for and be considered for staff and supervisory positions in the Knox County Clerk's office between 2008-2016. Those breaches of duty directly and proximately caused harm to Plaintiff Word making Defendant Arnett personally liable.

COUNT EIGHT

54. <u>Defendant Knox County's</u> practice of allowing Departments to fill supervisory vacancies without posting and advertising those positions and thereby preventing African Americans from applying or being considered was pervasive in other Knox County Departments constituting <u>additional disparate impact racial discrimination</u> in violation of the Tennessee Human Rights Act.

*Word*, 2020 WL 838534, at *2-3 (emphases in complaint).

This court affirmed in part and reversed in part the dismissal on the pleadings, concluding that certain claims should not have been dismissed:

> [W]e reverse the Trial Court in its dismissal at this judgment on the pleadings stage of [Ms.] Word's claims for violation of the THRA, hostile work environment, disparate treatment, retaliation, protected activity, and constructive discharge. We further reverse the Trial Court in its determination, again at this judgment on the pleadings stage, that [Mr.] Arnett may not face liability in his individual capacity.

*Id.* at *9. While reversing the grounds listed above, this court affirmed the dismissal as to Ms. Word's claims for intentional and negligent infliction of emotional distress. *Id.* This court also affirmed the dismissal of two parties: Knox County Clerk's office and Mr. Arnett in his official capacity. *Id.* at *8.

On remand, discovery ensued. The Defendants propounded certain requests for admission in discovery regarding the prior work policy infractions related to online shopping and personal emails. Defendants sought to have Ms. Word admit that she used her "county-issued computer and county-issued email account for personal matters during the work day and while on the clock"; that she "shopped online stores and made personal purchases during the work day and while on the clock on [her] county-issued computer"; that in 2012, she "shopped online . . . and made multiple . . . purchases using [her] county-issued email account"; and that she used her "county-issued computer on the clock to correspond with [a person], repeatedly, between January 5, 2012 until January 25, 2012." These requests regarding prior work policy infractions were interspersed with requests which appear not relevant or reasonably calculated to lead to the discovery of admissible information. *See* Tenn. R. Civ. P. 26.02(1) (allowing discovery of any matter relevant to

the subject matter involved in the pending action and for information "reasonably calculated to lead to the discovery of admissible evidence"). For example, Knox County propounded as a request, "Admit that an extramarital affair is wrong."[1]

Ms. Word did not, however, seek a protective order or seek to strike the improper discovery. *See* Tenn. R. Civ. P. 26.03 (allowing a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense"). Instead, she responded to all of the requests related to her prior work disciplinary record by stating, "DENIED and OBJECTION under Tennessee Rules of Civil Procedure Rule 26 or alternatively Rule 11. The Request is not reasonably calculated to lead to the discovery of admissible evidence. Instead it is intended to annoy, embarrass, oppress, harass and humiliate the Plaintiff and therefore is improper." We note that Ms. Word responded to other discovery requests with an objection unaccompanied by a denial.

During a deposition more than one year later, Ms. Word conceded that her denials regarding use of the county computer to send personal emails and to shop online during the workday were false. Based on the discovery violation in submitting false answers, the Defendants moved for sanctions. They argued that Ms. Word did not supplement her responses and that eight depositions had been taken during the time that the Defendants were operating under the impression she denied the work misconduct. They noted that Ms. Word's claims in the lawsuit were in part premised on her allegation that Mr. Arnett threatened her with "dirt" that would embarrass her. They asserted that the "dirt" was in fact the conduct which she denied in discovery but which she subsequently, during her deposition, acknowledged constituted grounds for termination. They argued they were entitled to the reasonable expenses incurred in proving the truth of the matters under Tennessee Rule of Civil Procedure 37.03(2). They also asked for either dismissal of the entire matter under Tennessee Rule of Civil Procedure 37.02(C) or an exclusion of evidence of the November 2 meeting.

Ms. Word responded by arguing that the Defendants had not taken the necessary steps to obtain sanctions. She asserted that the Defendants failed to file a motion to determine the sufficiency of Ms. Word's responses under Tennessee Rule of Civil Procedure 36.01 and argued that they were accordingly not entitled to sanctions. *But see* Tenn. R. Civ. P. 36.01 ("The party who has requested the admissions *may* move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served." (Emphasis added)). Ms. Word also pointed out the improper nature of some of the requests for admission propounded by Knox County. While Ms. Word asserted that these particular requests were in "bad faith," she did not offer a reason for denying the true statements regarding the misuse of the work-issued computer, other than to say that the admissions were "of no

---

[1] The record does not actually indicate that Ms. Word was having an extramarital affair.

substantial importance."[2]

In response to the motion for sanctions, Ms. Word did not raise an argument that exclusion of the November 2 meeting was an inappropriate sanction, instead arguing that the conduct was not sanctionable. The Defendants replied that they were not required to move for relief under Rule 36.01 prior to filing for sanctions, that the false responses were contumacious, and that the discovery gave context to the November 2 meeting because Ms. Word's retaliation claim concerned Mr. Arnett's use of the personal emails sent at work.

The trial court held a hearing and found that the discovery responses were perjurious and that sanctions were warranted. It nevertheless found dismissal was too harsh a sanction, and, after taking the matter under advisement, the trial court determined it would give a jury instruction, in part taken from the pattern instructions and in part stating that the court had determined that Ms. Word had made false statements under oath.

The Defendants moved to revise the sanctions under Tennessee Rule of Civil Procedure 54.02 , arguing that the proposed jury instruction could arguably violate a state constitutional prohibition on judges commenting on the credibility of witnesses. *See* Tenn. Const. art. VI, § 9 ("The Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."). In the motion, they again proposed the exclusion of the evidence of the November 2 meeting as an appropriate sanction.

Ms. Word responded that the sanctions imposed by the court were reasonable and that dismissal was too harsh. Ms. Word once again did not argue against the exclusion of the November 2 meeting. In fact, she presented no argument or legal authority supporting the conclusion that the Defendants' proposed sanctions were excessive, beyond the bare assertion that the trial court was correct in determining that dismissal was too harsh.

Although the parties now agree that the GTLA claims asserted in the complaint were no longer viable after the first appeal, they did not have that understanding at the time that the trial court was determining the sanction. Accordingly, when Ms. Word moved to set a jury trial, the Defendants argued that none of the claims still at issue, including the GTLA claim, entitled her to a jury trial. After filing their motion opposing a jury trial, the Defendants, in a separate filing, noted that without a jury trial, the trial court would not be able to use a jury instruction as a sanction.

The trial court agreed with the Defendants that it should revise its sanction. The court concluded that Ms. Word was not entitled to a jury trial because the claims under the GTLA were statutorily required to be decided "without the intervention of a jury" and the

---

[2] The County also objected to certain other discovery responses, and Ms. Word responded with justifications for her answers.

other claims did not entitle her to a jury trial. Tenn. Code Ann. § 29-20-307; *see Young v. City of LaFollette*, 479 S.W.3d 785, 793-94 (Tenn. 2015) (noting that "the constitutional right to trial by jury does not apply to statutory rights and remedies created after the adoption of the 1796 Constitution" and that the Tennessee Public Participation Act (TPPA) and THRA do not explicitly provide for jury trials).

At a hearing, the court expressly invited Ms. Word to propose an alternative sanction, noting it was considering striking the evidence of the November 2 meeting. Ms. Word yet again did not argue at the hearing that the exclusion of the evidence would be too harsh a sanction. When the Defendants' new counsel subsequently filed additional case law regarding dismissal as a discovery sanction, she responded only that dismissal was too harsh. At a second hearing, the Defendants' counsel again asked for dismissal. Regarding the alternative sanction, defense counsel stated, "That would be on its face a lesser sanction, but I do want to candidly tell the Court that we have summary judgment motions that would need to be filed in that event and I believe that would end up being dispositive anyway" due to the statute of limitations. Ms. Word's counsel explained that the Defendants were arguing "that the November 2015 meeting, if this is excluded, that kills the case. We would respectfully disagree . . . ." Ms. Word's counsel reiterated that dismissal was too harsh but again did not state that exclusion of the November 2 meeting was too harsh a sanction. Ms. Word's counsel likewise did not propose any alternative sanction, despite defense counsel expressly noting "that the plaintiff has not proposed any alternative to dismissal."

The trial court excluded the November 2 meeting as a sanction. In doing so, the court noted that Ms. Word's response to the motion for sanctions was simply to question the propounded discovery, although she had never sought a protective order from it. The court declined to dismiss the case but concluded the sanction was appropriate where Ms. Word "under oath falsely provided responses that were designed to intentionally obfuscate the truth." The court awarded reasonable attorney's fees.

The Defendants' government attorneys stipulated that they did not keep contemporaneous time records and stated that the hours submitted "were based upon conservative reconstructions of the time required to perform the relevant tasks." The trial court held a hearing on April 22, 2024, and it awarded $4,171 in attorney's fees and $1,695.37 in expenses.

The Defendants moved for summary judgment on multiple bases. They asserted that no acts prior to October 27, 2015, could serve as the basis of liability, and that with the exclusion of the November 2 meeting, the only remaining act within the limitations period was the warning regarding the telephone greeting. They argued that the THRA claims could not be established under a theory of continuing violation.[3] They likewise

---

[3] Generally, where discrimination is premised on "a '[d]iscrete act[] such as termination, failure to promote, denial of transfer, or refusal to hire,' each alleged act of discrimination must be evaluated

argued that Mr. Arnett had no individual liability, and they argued that each remaining claim must be dismissed based on the undisputed material facts. After the initial motion for summary judgment, the Defendants filed an additional motion seeking summary judgment as to all non-THRA claims. In addition to arguing that these claims, including the GTLA claims, were waived in the prior appeal, they argued that they were preempted by the THRA, that the County retained sovereign immunity, that any TPPA claim could not proceed against an individual, and that the elements of the claims were not satisfied.[4]

Ms. Word opposed summary judgment, arguing that the continuing violation doctrine allowed her to bring claims falling outside the limitations period because the failure to post supervisory positions was sufficiently related to discriminatory conduct occurring within the limitations period. She responded to some of the other bases for summary judgment asserted by the Defendants.

The trial court granted summary judgment to the Defendants on all Counts. In doing so, the trial court gave multiple, independent reasons supporting the grant of judgment as a matter of law for each dismissed Count.

In explaining its ruling, the trial court indicated that Ms. Word's response to the statement of undisputed material facts did not comply with Tennessee Rule of Civil Procedure 56.03. Accordingly, the court deemed all the proposed material facts undisputed. In transcripts incorporated into the order, the trial court noted that Ms. Word's responses made conclusory legal arguments rather than pointing the court to disputed facts. The trial court further noted that some of the responses from Ms. Word indicated the fact was disputed but the citation provided by her did not contain information relevant to the purportedly disputed fact. The court cited to specific responses in demonstrating this

_____

independently to determine whether it occurred within the limitations period." *Booker v. The Boeing Co.*, 188 S.W.3d 639, 646 (Tenn. 2006) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002)). Under the continuing violation doctrine, however, a plaintiff may "show a series of related acts, one or more of which falls within the limitations period." *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884, 889 (Tenn. 1996), *overruled in part by Booker.*, 188 S.W.3d 639. "This doctrine relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period." *Id.*

[4] Ms. Word argues on appeal that the Defendants premised their objection to a jury trial on the GTLA claims. She asserts that the Defendants in the second summary judgment motion disingenuously asserted they were "unaware when their summary judgment motions were filed that Plaintiff claimed to maintain common law negligence claims, GTLA claims, or TPPA claims after the prior appeal." We agree that Defendants appeared to believe the GTLA claims were still live in the context of the filings regarding a jury trial. Furthermore, during a hearing on January 30, 2024, Ms. Word's counsel advocated having a simultaneous jury trial and bench trial (for the GTLA claims), and the Defendants' new counsel did not assert that the GTLA claims were no longer viable. However, Defendants did not, as Ms. Word asserts, premise the denial of the jury trial on the GTLA claims; it was the trial court that cited to the statutory language stating that the court must "hear and decide such suits without the intervention of a jury." Tenn. Code Ann. § 29-20-307.

deficiency. As one example, the court pointed to Ms. Word's response that she disputed that two Caucasian males were hired because "[t]hey were not hired because they did not go through the required Knox County hiring policies." Her complaint itself alleged that Mr. Arnett hired the Caucasian supervisors. The court concluded that the denial that the supervisors were hired was inappropriate and not supported by facts in the record.

Regarding the statute of limitations, the trial court concluded that the continuing violations doctrine did not apply because nothing in the summary judgment record indicated Ms. Word was subjected to any adverse employment action within one year of the filing of the lawsuit, as the telephone warning was "not a sufficient adverse employment action." The court further determined the prior failures to promote and demotions were all discrete acts that could not form a continuing violation. Ultimately, the court found that the statute of limitations barred all claims.

In addition, the court found that Mr. Arnett was not individually liable under either version of a statute, Tennessee Code Annotated section 4-21-301, which had been amended after some allegedly discriminatory acts but prior to others. The court determined Mr. Arnett was not liable under the new version of the statute because it removed individual liability when it was amended on July 1, 2014. *See* 2014 Tenn. Pub. Acts ch. 995, § 1 (effective July 1, 2014). Furthermore, the trial court concluded that Mr. Arnett's actions did not fit the statutory requirement of aiding and abetting under the prior version of the statute. The court concluded that Ms. Word did not meet her burden of showing a prima facie case for disparate impact for lack of statistical or other evidence. It found she could not show an act of retaliation because her complaint of discrimination came after the verbal reprimand. The court dismissed the constructive discharge claim because Ms. Word had not shown evidence of work conditions so difficult, unpleasant, or intolerable that a reasonable person would resign. The court likewise found that Ms. Word did not produce any evidence meeting the elements of malicious harassment. The court concluded that the GTLA and TPPA claims had been waived in the prior proceedings. It likewise found any non-THRA claims preempted by the THRA under *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992) (holding that "if a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive"). The court alternatively concluded that sovereign immunity barred the negligence claims. It likewise determined Ms. Word had offered no evidence to support the elements of her TPPA claim. The court's order stated that, if it were mistaken as to the dismissal of the non-GTLA claims, it would permit a jury trial.

Meanwhile, the Defendants had filed a motion for Rule 11 Sanctions. They asserted in part that Ms. Word's denials of factual contentions in Defendants' statements of undisputed material facts "will be unwarranted by the summary judgment record in this case," citing Tennessee Rule of Civil Procedure 11.02(4).

In the "Conclusion" paragraph of the brief opposing Rule 11 sanctions, Ms. Word's

counsel objected for the first time to the exclusion of the November 2 meeting as a sanction. The court granted Rule 11 sanctions in the amount of $3,074.50 against Ms. Word's attorney, George Underwood. In doing so, the trial judge noted that the court faced challenges in its decisions because the complaint and the Plaintiff's filings were "inartfully drawn." This court had noted in the prior appeal in *Word I* that the complaint was "not a model of clarity." *Word I*, 2020 WL 838534, at *7. The court found that Ms. Word's responses to the statement of undisputed material fact were "not proper" in that they "did not point this Court specifically to places in the record that created disputed issues of material fact that a finder of fact could find in favor of the Plaintiff's claims." The court distinguished this circumstance from asserting an invalid claim.

Ms. Word appeals the summary judgment based on the exclusion of the evidence, on the applicability of the continuing violation doctrine, and on the dismissal of Mr. Arnett in his individual capacity, and she challenges the two orders assessing attorney's fees and costs as sanctions.

II.

Under Tennessee Rule of Civil Procedure 56.04, a court may grant a party summary judgment on a claim when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review an order granting summary judgment de novo, with no presumption of correctness. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019). A party seeking summary judgment who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

A motion for summary judgment "shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial," set forth in separate numbered paragraphs and supported by citations to the record. Tenn. R. Civ. P. 56.03. The party opposing the motion may set forth additional facts demonstrating that there exists a genuine issue to be tried. *Id.* In response to a motion for summary judgment supported under the Rule, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party may not merely assert "some metaphysical doubt as to the material facts." *Rye*, 477 S.W.3d at 265 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, it must "demonstrate the existence of specific facts in the record which

could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* The evidence at a motion for summary judgment must be viewed in the light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor. *Cotten*, 576 S.W.3d at 637. However, a failure to set forth specific facts showing a genuine issue for trial will result in the court granting summary judgment. Tenn. R. Civ. P. 56.06.

III.

We note at the outset that the complaint, which this court previously deemed "not a model of clarity," was not amended on remand to rectify any deficiencies. *See Word*, 2020 WL 838534, at *7. Accordingly, this court has had some difficulty identifying Ms. Word's claims and determining which claims are purportedly at issue on this appeal. For instance, the parties refer to a TPPA claim despite the fact that there is no citation or reference to the TPPA in the Complaint.

The trial court bolstered its determination to grant summary judgment as to most of the grounds asserted with multiple, independent reasons supporting the grant of judgment as a matter of law. This court has observed that "[g]enerally, where a trial court provides more than one basis for its ruling, the appellant must appeal all the alternative grounds for the ruling." *Ramos v. Caldwell*, No. M2022-00222-COA-R3-CV, 2023 WL 1776243, at *3 (Tenn. Ct. App. Feb. 6, 2023) (quoting *Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *7 (Tenn. Ct. App. Aug. 6, 2018)). "Where an independent alternative ground for the ruling is unchallenged on appeal, a reasonable course for an appellate court is simply to affirm the trial court's ruling." *Reguli v. Anderson*, No. M2022-00705-COA-R3-CV, 2024 WL 1708347, at *10 (Tenn. Ct. App. Apr. 22, 2024), *perm. app. denied* (Tenn. Sept. 12, 2024). Ms. Word has either not appealed alternative grounds supporting dismissal of the bulk of these claims or has explicitly conceded she is not pursuing them.

Accordingly, we attempt to bring clarity to the status of various claims. Regarding the GTLA claim in Count 2, Ms. Word has presented no argument on appeal challenging the court's ruling that Count 2 should be dismissed under a theory of preemption, due to the expiration of the statute of limitations, waiver in the first appeal, or based on sovereign immunity as to the County. Accordingly, the grant of summary judgment as to Count 2 is affirmed.

Count 3, which has been described in the record as a TPPA claim, common law retaliation claim, and constructive discharge claim, was dismissed pursuant to preemption, the statute of limitations, waiver in the first appeal, and failure to make out the statutory elements. Ms. Word did not challenge these bases for the granting of summary judgment, and the judgment, accordingly, is affirmed.

Insofar as Ms. Word continues to challenge the dismissal of the malicious

harassment claim, which appears to be raised in Count 4, the trial court's grant of summary judgment is affirmed on the basis that Ms. Word did not challenge the trial court's finding that the Defendants were entitled to judgment as a matter of law because Ms. Word had no evidence that could lead a rational trier of fact to find in her favor regarding the statutory elements of the cause of action. *See* Tenn. Code Ann. § 4-21-701(b) (liability follows when a person "[i]njures or threatens to injure another person," "[c]oerces another person," or "[d]amages, destroys, or defaces real or personal property of another person or public property").

The dismissal of the emotional distress claims in Counts 5 and 6 was affirmed in the prior appeal, and accordingly, these Counts are no longer before us. *Word*, 2020 WL 838534, at *9.

The trial court granted summary judgment as to the negligence claim in Count 7 under several theories, including that it was barred by the statute of limitations, that it was waived in the prior appeal, and that it was preempted by statute.[5] Ms. Word does not challenge these bases for the trial court's dismissal of Count 7. Accordingly, the grant of summary judgment is affirmed as to this ground.

Likewise, she does not challenge the trial court's ruling that the disparate impact claim in Count 8 should be dismissed because she could not point to any dispute as to the existence of the necessary statistical evidence to make out the claim, and she explicitly conceded this ground in her reply brief and during oral argument.

During oral argument, counsel acknowledged that Ms. Word was not challenging the bulk of the dismissed claims, stating, "What remains are retaliation, malicious harassment, disparate treatment claims under the [THRA]." The malicious harassment claim, as noted above, is waived for failure to challenge the independent alternative grounds for dismissal. Accordingly, we affirm the grant of summary judgment as to the Counts listed above.

IV.

At oral argument, Ms. Word asserted that she was still pursuing claims of retaliation, malicious harassment, hostile work environment and disparate treatment under the THRA.[6]

---

[5] It is unclear if this claim was under the GTLA, but the court concluded any GTLA claim was also barred based on sovereign immunity as to the County.

[6] Her brief also lists "protected activity" and constructive discharge. Ms. Word's reply brief clarifies that "protected activity" is related to the retaliation claim under the THRA. *See* Tenn. Code Ann. § 4-21-301(a)(1). As we noted above, Ms. Word did not challenge the independent grounds supporting the grant of summary judgment as to any allegation of constructive discharge.

- 13 -

Ms. Word argues that the trial court erred in excluding evidence of the November 2 meeting, that it erred in its interpretation of the continuing violation doctrine, and that it erred in granting summary judgment on her claims against Mr. Arnett individually. The Appellees respond to Ms. Word's arguments by asserting that she has failed to challenge numerous alternative bases for the trial court's judgment, that she has waived issues, and that the judgment should accordingly be affirmed.

A.

Ms. Word argues that the trial court's sanction of excluding proof regarding the November 2 meeting was an abuse of discretion. Appellees raise several arguments in opposition, including that Ms. Word invited the error by asserting that the exclusion would not "kill[]" the case, by failing to offer an alternative sanction, and by failing to seek reconsideration until after the grant of summary judgment. We agree that the record below demonstrates waiver.

The Defendants moved for sanctions after Ms. Word acknowledged during her deposition that her responses to the requests for admission were incorrect. Ms. Word filed a response to the motion for sanctions, but she did not raise an argument that exclusion of the November 2 meeting was an inappropriate sanction, instead arguing that the conduct was not sanctionable. The trial court held a hearing and imposed the jury instructions as a sanction. The Defendants moved to revise on multiple bases, seeking either dismissal or an exclusion of the November 2 meeting. Ms. Word once again did not present an argument that the exclusion of the evidence would be too harsh, arguing instead that the jury instructions were a reasonable sanction and that dismissal was too harsh.

The trial court agreed that it should revise its sanction. The court held a hearing and expressly invited Ms. Word to propose an alternative sanction, noting it was considering striking the evidence of the November 2 meeting. Ms. Word once again did not argue at the hearing that the exclusion of the evidence would be too harsh a sanction. When Defendants' new counsel subsequently filed additional case law regarding dismissal as a discovery sanction, she responded only that dismissal was too harsh.

The court held another hearing, during which defense counsel asked for dismissal, presented the exclusion of evidence as an alternative, and "candidly" acknowledged to the court that the defense would be moving for summary judgment based on the limitations period if the exclusion of evidence was granted, viewing the exclusion as dispositive. Ms. Word's counsel disagreed that the exclusion of the evidence "kills the case." Ms. Word's counsel reiterated that dismissal was too harsh but yet again did not argue that exclusion of the November 2 meeting was too harsh a sanction.

The trial court excluded the evidence, and the Defendants moved for summary judgment. Their statement of undisputed facts omitted the November 2 meeting, and their

- 14 -

motion noted that the evidence had been excluded. Ms. Word opposed the motion for summary judgment but at this point still did not challenge or file any motion to revisit the sanction of excluding the evidence.

Ms. Word's counsel first objected to the exclusion of the November 2 meeting as a sanction after the court had ruled upon the summary judgment motions, when the court was making a determination regarding Rule 11 sanctions as its final step to perfecting a final judgment for appeal. She never filed a motion to revisit the sanctions determination. Instead, in her opposition to the Rule 11 sanctions, she included a plea for the trial court to "reverse its decision to exclude evidence" of the meeting in the "Conclusion" paragraph in addressing the Rule 11 sanctions.

We conclude that Ms. Word's actions constitute waiver. While Tennessee Rule of Appellate Procedure 36(a) instructs the court to grant relief on the law and facts to which the party is entitled, "[n]othing in [Rule 36] shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). When a party fails to raise an issue in the trial court, the issue is waived on appeal. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court."); *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009) ("Because Father did not properly raise this issue in the trial court, he has waived his right to argue this issue for the first time on appeal."); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996) ("Under Tennessee law, issues raised for the first time on appeal are waived.").

Ultimately, Ms. Word did not object to the exclusion of evidence of the meeting (1) when the Defendants first proposed it as a sanction, (2) when the Defendants moved the court to revise the sanctions related to jury instructions, (3) during a hearing in which the Plaintiff was expressly invited by the court to propose an alternative sanction, (4) when the court actually imposed the sanction, or (5) when the Defendants moved for summary judgment based on the exclusion of the evidence. It was only after summary judgment was rendered that Ms. Word lodged an objection to the sanction, and this objection did not come in the form of a motion to set aside the ruling, but was incorporated into the response to the separate, Rule 11 motion for sanctions. Furthermore, Ms. Word did not cite any procedural mechanism such as the Rules of Civil Procedure to support revisiting the sanctions decision, nor did she cite to authority that the sanction was too harsh. Ms. Word instead merely stated it was fatal to the case and asked the court to "reverse its decision to exclude evidence of the Nov. 2, 2015, meeting." We cannot conclude that the trial court committed error when Ms. Word never objected to the sanction and when the only request to reconsider the sanction came well after the imposition of the sanction, at a time when summary judgment had already been granted, and as an afterthought in a filing addressing a different issue, with no legal authority or procedural mechanism cited for revisiting the prior decision. Ms. Word is not entitled to relief on this issue.

B.

Ms. Word next asserts that the trial court erred in concluding that the continuing violation doctrine does not apply to her claims. "The continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006). Because we conclude that any challenge to the exclusion of the November 2 meeting has been waived, Ms. Word's argument that the court erred in rejecting the continuing violation doctrine is unavailing. Ms. Word did not challenge the court's conclusion that the October 28 verbal warning regarding telephone etiquette did not rise to the level of an adverse employment action. Her argument regarding a continuing violation is therefore premised on the lawsuit being filed within one year of the November 2 meeting. *See* Tenn. Code Ann. § 4-21-311(d) ("A civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases . . .") (effective June 10, 2011 to May 11, 2025). Without the November 2 meeting, there is no act falling within the limitations period which could form a basis for asserting a continuing violation under the THRA. Accordingly, she is not entitled to relief.

C.

On appeal, Ms. Word argues that the claims against Mr. Arnett in his individual capacity should not have been dismissed. The trial court granted summary judgment for Mr. Arnett individually on multiple bases. Initially, the court determined that there was no liability under the version of the statute in place when the verbal warning — the only potential act falling within the limitations period — occurred. *See* Tenn. Code Ann. § 4-21-301(b) ("No individual employee or agent of an employer shall be liable for any violation of part 4 of this chapter that any employer shall be found to have committed.") (effective July 1, 2014 to May 11, 2025). Next, the court determined that the prior version of the statute, which permitted individual liability, did not impose liability on an actor acting alone but required aiding or abetting a second actor. *See* Tenn. Code Ann. § 4-21-301(2) (making it a discriminatory practice to "[a]id, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter") (effective August 5, 2011 to June 30, 2014). The court then found that Ms. Word did not allege that Mr. Arnett aided or abetted a second actor. The court accordingly determined that, even if it were to apply the prior version of the statute, there was no genuine dispute of material fact from which a trier of fact could determine that the statutory elements were met, because Ms. Word did not allege aiding or abetting.

Ms. Word believes that the pre-2014 version of the statute, which provides for individual liability, should apply. However, her only reasoning is that this court previously

- 16 -

determined that the Defendants were not entitled to judgment on the pleadings on the issue of individual liability. In *Word I*, this court determined that judgment on the pleadings was inappropriate because Ms. Word "alleged that [Mr.] Arnett's discriminatory practices go all the way back to 2008 when he came into office. This being so, [Ms.] Word's claim began to accrue under the old version of the statute." *Word I*, 2020 WL 838534, at *8. This determination was made in the context of this court's conclusion that it was "premature at this stage to exclude the possibility that the continuing violation doctrine may yet apply to preserve for consideration those discriminatory actions and practices that Word alleged took place outside the statute of limitations period." *Id.* at *7.

As noted above, however, at the current stage of the proceedings, Ms. Word has waived any challenge to the exclusion of the November 2 meeting. She likewise has not challenged the trial court's finding that no other adverse action occurred within the limitations period. This court previously reversed judgment on the pleadings due to the possibility that the continuing violation doctrine might apply based on the pleadings. However, our court is now reviewing a summary judgment ruling, and pursuant to the analysis above, the continuing violations doctrine cannot apply because there is no allegedly discriminatory act falling within the limitations period. Accordingly, Ms. Word has not offered any viable argument that the trial court erred in applying the statute in effect in 2015 when it granted summary judgment.

Additionally, in her principal brief, Ms. Word does not offer any legal argument to challenge the trial court's conclusion that the pre-2014 statute required Mr. Arnett to act in concert with another person for liability. Ms. Word focuses on the word "incite" rather than the words "aid" and "abet" as the trial court did, but she does not argue that the court was incorrect in requiring another "person" to establish liability under the statute. *See* Tenn. Code Ann. § 4-21-301(2) (making it a discriminatory act to "[a]id, abet, incite, compel or command *a person* to engage in any of the acts or practices declared discriminatory by this chapter" (emphasis added)) (effective August 5, 2011 to June 30, 2014).

In her reply brief, Ms. Word addresses the court's reading that she had to demonstrate that Mr. Arnett acted with another person. She asserts that Mr. Arnett's policy of not posting positions "could be construed as 'compelling' or 'commanding' others in his employ to engage in this discriminatory practice." However, this argument is skeletal, consisting of two sentences asserting in a conclusory way that Mr. Arnett compelled someone to engage in discriminatory acts or practices. When an appellant "merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). Furthermore, this court does not consider issues first raised in a reply brief. *Hughes v. Tennessee Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017) ("Issues raised for the first time in a reply brief are waived."); *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 732 (Tenn. Ct. App. 2017) ("Issues cannot be raised for the first time in a reply brief.").

Accordingly, the dismissal as to Mr. Arnett is affirmed.

V.

Ms. Word challenges the court's imposition of attorney's fees and costs upon her as sanctions for the discovery violations. Mr. Underwood, Ms. Word's attorney, also challenges the Rule 11 sanctions imposed upon him. The Defendants assert that the issues related to fees are waived or outside this court's jurisdiction.

A.

Regarding the discovery sanctions, Ms. Word argues that the trial court abused its discretion because the Defendants "were put to no additional expense" by her false statements. She further argues that, because the government attorneys did not keep contemporaneous time records, their affidavits constituted mere "guesswork" as to the amount of fees. The Defendants argue that Ms. Word has waived this issue for failure to cite to the record or show that she raised a challenge on this basis below, and they argue alternatively that Ms. Word has not shown the fee award was not reasonable.

The Defendants are correct that Ms. Word fails to cite to the record to direct this court to the Defendants' fee application, to her opposition to the fee application, or to the trial court's decision and reasoning. The only record citation made by Ms. Word is to the parties' stipulation that the attorneys did not keep contemporaneous time records. Ms. Word filed a reply brief in which she did not correct the deficiencies which the Defendants raised. The record in this case is substantial, consisting of eleven volumes and 1603 pages of technical record. While "appellate courts have appropriately soldiered on to consider a party's arguments when . . . the party's brief simply fails to repeat record citations in the argument section that are readily available in earlier sections," *DiNovo v. Binkley*, 706 S.W.3d 334, 337 (Tenn. 2025), the reviewing court need not "scour[] the record for reversible errors," *Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). Indeed, "[j]udges are not like pigs, hunting for truffles that may be buried in the record." *Halterman-Scott v. Tennessee Soc'y of Certified Pub. Accts.*, No. M2024-00373-COA-R3-CV, 2024 WL 4212346, at *2 (Tenn. Ct. App. Sept. 17, 2024) (quoting *Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015)) (citation omitted). The briefing here tends to put the court in the position a pig casting about for truffles.

In any event, we conclude that this issue is waived for failure to cite relevant authority. Tenn. R. App. P. 27(a)(7)(A) requires a brief to contain "citations to the authorities . . . relied on." The only legal citation in this section of the brief is related to the standard of review for a trial court's award of fees as sanctions. Ms. Word asserts that the County attorneys' failure to keep contemporaneous time records is fatal to their fee

- 18 -

application, but she cites no authority to support this conclusion and does not develop her argument. The Defendants, on the other hand, in response cite *Fell v. Rambo*, where an attorney with a contingency contract was awarded quantum meruit fees despite the lack of contemporaneous records because, "[a]lthough he did not keep detailed records of his time, [the attorney] provided the trial court with a detailed list of the tasks he performed and copies of the documents he researched, drafted, and reviewed." 36 S.W.3d 837, 853 (Tenn. Ct. App. 2000). Additionally, Ms. Word's reply brief does not address the issue of fees. The Tennessee Supreme Court has observed that "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed*, 301 S.W.3d at 615. Here, Ms. Word presents the court with the bare assertion that the award is improper, based in part on lack of contemporaneous records, but does not provide authority or argument and does not respond to the Defendants' cited authority. We conclude that the briefing of this issue is skeletal and that it is, accordingly, waived.

B.

The trial court imposed sanctions under Rule 11 based on its conclusion that the responses of Ms. Word's attorney, Mr. Underwood, to the undisputed statement of material facts under Rule 56 violated Rule 11 because the purported disputes had no factual support in the record or were otherwise inappropriate. Mr. Underwood challenges the imposition of Rule 11 sanctions, arguing that the Rule 56 responses merely reflect that Ms. Word was hampered by the exclusion of the evidence of the November 2 meeting. He notes that exhibits were attached to the response to the summary judgment motion. Mr. Underwood argues that the trial court could only impose Rule 11 sanctions if the underlying litigation was unsupported by law or fact and argues that public policy supports permitting persons who are the subject of discrimination to file suit.

Defendants respond that this court does not have jurisdiction to consider the Rule 11 sanctions awarded against Mr. Underwood because he did not file a timely notice of appeal. They cite to *McGaugh v. Galbreath* for the proposition that "[t]o be considered an appellant, a party must file a timely notice of appeal in its own name, or it must be named as an appellant in a timely joint notice of appeal filed in accordance with Tenn. R. App. P. 16(a)." 996 S.W.2d 186, 189-90 (Tenn. Ct. App. 1998) (quoting *Town of Carthage, Tenn. v. Smith Cnty.*, No. 01-A-01-9308-CH00391, 1995 WL 92266, at *3 (Tenn. Ct. App. 1995)). Under *McGaugh*, "[p]arties who do neither are simply not before the court as appellants." *Id.* at 190 (quoting *Town of Carthage*, 1995 WL 92266, at *3 ). In *McGaugh*, this court concluded that, when Rule 11 sanctions were imposed and designated as final against both a husband and wife, wife's failure to join in a timely notice of appeal precluded her appeal of the sanctions. *Id.* Accordingly, the Defendants have presented the court with a developed jurisdictional argument which cites legal authority in support of their position.

While an extensive reply brief was filed, there is no response therein to this jurisdictional argument. In fact, the reply brief does not address the Rule 11 sanctions at all. There is not even a conclusory assertion in the reply brief in opposition to the position advanced by Defendants that this court is without jurisdiction to address the Rule 11 sanctions. There is nothing in the reply brief that even implicitly suggests opposition to Defendants' contention. Additionally, no argument was advanced at oral argument in the present case asserting that Defendants' jurisdictional argument on the Rule 11 sanctions is errant.

Addressing similar circumstances, this court has previously observed the following:

> Waiver and concession in the context of issues related to justiciability function as a one-way ratchet. Where a case is non-justiciable, thus outside the bounds of the authority of Tennessee courts to adjudicate the matter, the parties cannot confer jurisdiction through waiver or by consent. Alternatively, where a well-developed argument asserting a matter is non-justiciable has been properly advanced on appeal and is not addressed by the opposing party, this court has found waiver to be applicable.

*Dominy v. Davidson Cnty. Election Comm'n*, No. M2022-00427-COA-R3-CV, 2023 WL 3729863, at *4 (Tenn. Ct. App. May 31, 2023) (citations omitted). Given the filings in the present case, this court is placed in a position of lawyering this issue or finding waiver. We conclude that a challenge to the Rule 11 sanctions against Mr. Underwood is waived.

VI.

The Defendants seek to recover fees based on the assertion that this appeal was frivolous. Under Tenn. Code Ann. § 27-1-122,

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122.

The frivolous appeal statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977); *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001); *see also*, *e.g.*, *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 547 (Tenn. Ct. App. 2005). "Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable—which is

rare." *Conder v. Salyers*, 421 S.W.3d 589, 597 (Tenn. Ct. App. 2013) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010)). Nevertheless, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Davis*, 546 S.W.2d at 586; *see also, e.g., Glanton v. Lord*, 183 S.W.3d 391, 401 (Tenn. Ct. App. 2005); *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999). Ultimately, "[t]he award of damages for the filing of a frivolous appeal lies within the sound discretion of this Court*." GSB Contractors, Inc.*, 179 S.W.3d at 547; *see also, e.g., Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).

The Defendants primarily premise this request for relief upon failure to cite to the statement of undisputed material facts in Ms. Word's appellate brief. However, Ms. Word's arguments on appeal are more focused on challenging the legal, rather than factual, bases of the trial court's decisions. Any deficiency in citation to the statement of undisputed material facts simply does not render this a frivolous appeal in light of the arguments advanced on appeal. The present case is simply not an appropriate one for an award of attorney's fees based on the Defendants' arguments. Exercising our discretion, we decline to award the Defendants attorney's fees.

## VII.

Based on the foregoing, we affirm the trial court's order granting judgment as a matter of law. Costs of this appeal are taxed to the appellant, Mona Word, for which execution may issue if necessary.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE